[No. 47453-2. En Banc. September 3, 1981.]

FEDERATED PUBLICATIONS, INC., *Petitioner,* v.
BYRON L. SWEDBERG, *as Judge of the
Superior Court for Whatcom
County, Respondent.*

*McCush, Kingsbury, O'Connor, Ludwigson, Thompson & Hayes,* by *John S. Ludwigson,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Kevin M. Ryan, Assistant,* for respondent.

ROSELLINI, J.—This case is before the court as a result of a ruling by the Honorable Byron L. Swedberg in the case of State v. Compton, Whatcom County cause No. 80–1–00322–7, whereby he refused to grant a defense motion to close a

suppression and CrR 3.5 hearing to the public, but conditioned media attendance upon the signing of an agreement to abide by the Bench–Bar–Press Guidelines.

The defendant in the Compton case had been charged with attempted murder. She was reputed to be the girlfriend of Kenneth Bianchi, known as the "Hillside Strangler". Bianchi's crimes were the subject of extensive news coverage locally, regionally and even nationally. The defendant Compton's alleged crime also received considerable attention by the media, although it did not reach the dimensions of the coverage given the Bianchi· case. The defendant's motions were based upon the substantial likelihood that prospective jurors would read or watch publicity about the evidence discussed at the hearing and would form improperly based opinions as to the defendant's guilt.

A representative of the petitioner, publisher of the Bellingham Herald, objected to the motions to close the hearing and seal certain evidence, as did other representatives of the media who were present.

The court heard argument and determined that publication of detailed reports of the suppression and CrR 3.5 hearings would prejudice the defendant's right to a fair trial and that other alternatives to closure would be ineffective. While he denied the motion to close the hearing, the judge, after questioning the media representatives as to whether they were familiar with the Bench–Bar–Press Guidelines and were willing to abide by them, imposed as a condition to media attendance the signing of an agreement to abide by the guidelines. Some representatives accepted this condition, signed the form of agreement provided by the prosecutor, and attended the hearing. The petitioner, through its agent, refused to sign and also refused to agree that its reporters would attend the hearing as members of the public and not in their professional capacity. Pursuant to the court's ruling, representatives of the petitioner and others who refused to sign left the courtroom.

The petitioner inaugurated this proceeding to determine the propriety of the order insofar as it excluded media rep-

resentatives unwilling to sign a commitment to abide by the Bench–Bar–Press Guidelines.

The Compton case was tried in March, and we realize that our opinion here will have no effect on those proceedings.[1] However, since it appears that the question is one which is likely to arise again and which will continue to evade review, we have taken cognizance of the petition.

In ruling on the closure motion, the trial court had in mind this court's opinion in *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 615 P.2d 440 (1980), where we held that Const. art. 1, § 10 bestows upon the public (including the media) a right of access to certain judicial proceedings, including the pretrial hearing.[2] That right, we said, must be balanced against the right of a person accused of a crime to be tried by an impartial jury free from outside influence. When the accused makes a showing that there is a likelihood of prejudice to his constitutional rights if the hearing is open to the public, and the objectors, if any, propose no acceptable and practical alternative to closure, the court may order closure, after giving due consideration to the interests of the accused and the public. The order "must be no broader in its application or duration than necessary to serve its purpose". 94 Wn.2d at 64.

Certain alternatives to closure had been proposed by the petitioner in that case, which is the same publisher that is petitioning here. Suggested were continuance, severance, change of venue, change of venire, voir dire, peremptory

---

[1] In spite of the innovative precautions taken by the trial judge, he found it necessary to impanel a jury from Pierce County to ameliorate the effects of pretrial publicity.

[2] The United States Supreme Court had previously held, in *Gannett Co. v. DePasquale,* 443 U.S. 368, 61 L. Ed. 2d 608, 99 S. Ct. 2898 (1979), construing the Sixth Amendment, that preliminary hearings may be closed to the public and the media in order to protect the defendant's right to a fair trial under the United States Constitution. It has since held, in a plurality and concurring opinions in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814 (1980), that the public and the press have a First and Fourteenth Amendment right to attend criminal *trials,* absent an overriding interest, articulated in findings.

challenges, sequestration of the jury and admonitions to the jury. Those alternatives all involved some compromise of a right or interest of the accused or the State. None of the suggested alternatives involved the exercise of some restraint on the part of the media.

■ A continuance, if it is to be effective to allay the prejudice engendered by prejudicial publicity, will almost invariably delay the trial far beyond the time contemplated by CrR 3.3, which is designed to protect not only the right of the accused to a speedy trial but the interest of the public in seeing that the administration of justice is expedited. It also compromises the constitutional right of the accused to have a speedy trial (Const. art. 1, § 22). It is noteworthy that the constitutional provision which declares that justice shall be administered openly also prescribes that it shall be done without unnecessary delay (Const. art. 1, § 10).

Severance is an available alternative only when the prejudicial publicity affects a codefendant. It may operate to the disadvantage of the prosecution in presenting its case.

A change of venue requires the accused to give up the right to be tried by a jury of the county where the offense was committed (Const. art. 1, § 22; U.S. Const. amend. 6). A change of venue entails inconvenience of witnesses, counsel and the court itself, as well as members of the community who may wish to attend the trial. It is obviously for the benefit of the latter, as well as that of the defendant, that the constitutional requirement of openly administered justice was intended.

■ The right to trial by jury includes the right to an unbiased and unprejudiced jury. *State v. Stiltner,* 80 Wn.2d 47, 491 P.2d 1043 (1971). It is unlikely that a mere change of venire will produce a jury unexposed to the prejudicial publicity if it has been circulated throughout the county, as is the case here.

It is conceivable that by intensive voir dire, all prejudiced jurors may be eliminated. However, trial judges are aware that veniremen are loath to admit prejudice, or perhaps unable to recognize it, and intensive voir dire is apt to put

the juror on the defensive and engender resentment toward the client of the attorney who pursues it. It is also unfair that an accused should be forced to use all or most of his peremptory challenges to rid the jury of persons who have read or heard of the prejudicial publications.

Sequestration is not a viable alternative if the hearings are held before the trial jury has been impaneled, and one objective of the hearings, to enable the parties to learn whether the evidence will be admitted and to prepare their cases accordingly, will be defeated if the hearing is not far enough in advance of the trial to allow for such preparation. In addition, under CrR 4.5, providing for the omnibus hearing, there are other matters which need to be resolved prior to the trial, such as the question whether there should be a pretrial conference.

Finally, jury admonitions may tend to focus the attention of the jurors upon the objectionable material, rather than to cleanse their minds of its effects.

The trial judge undoubtedly had these considerations in mind when he found that publicity with respect to the evidence considered at the suppression hearing would prejudice the defendant's right to a fair trial and that there was no feasible alternative to complete closure, other than partial closure. No error has been assigned to those findings, the only contention of the petitioner being that it was beyond the power of the court to exclude from the courtroom those members of the media, appearing in their professional capacity, who refused to sign an agreement to abide by the Bench–Bar–Press Guidelines.

The theory of the petitioner is that the requirement imposed by the lower court constituted a prior restraint of the kind which was found unconstitutional in *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976).

In that case, a state district judge had entered an order restraining members of the Nebraska Press Association from publishing or broadcasting accounts of confessions or admissions made by the accused or facts "strongly implica-

tive" of the accused in a widely reported murder of six persons. The court held that an order of that kind—one which prohibited the publication or broadcast of particular information or commentary—was a "previous" or "prior" restraint on speech and came before the court with a "'heavy presumption against [its] constitutional validity'", as a consequence of which there was imposed upon the lower court a heavy burden of showing justification for the restraint. *Nebraska Press Ass'n,* at 545. The test to be applied, the court said, was that which was articulated by Judge Learned Hand in *United States v. Dennis,* 183 F.2d 201, 212 (2d Cir. 1950), *aff'd,* 341 U.S. 494, 95 L. Ed. 1137, 71 S. Ct. 857 (1951). The question is whether "the gravity of the 'evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger."

■ We need not decide whether the circumstances of this case meet that test, as we are convinced that the order of the court did not involve a prior restraint upon the exercise of free speech.[3] There was no prohibition of publication or other communication of events which transpired in the courtroom.

The Supreme Court has recently held, in *Gannett Co. v. DePasquale,* 443 U.S. 368, 61 L. Ed. 2d 608, 99 S. Ct. 2898 (1979), that in order to safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity, and he may take protective measures even when they are not strictly and inescapably necessary. A majority of the court, speaking through Mr. Justice Stewart, said:

> Publicity concerning pretrial suppression hearings such as the one involved in the present case poses special risks of unfairness. The whole purpose of such hearings is to screen out unreliable or illegally obtained evidence and

---

[3]For the same reason, the case of *State ex rel. Superior Court v. Sperry,* 79 Wn.2d 69, 483 P.2d 608 (1971), is inapposite. There a court's order prohibited publication of evidence produced at trial, and this court held that the order was invalid, because it was broader than was necessary to accomplish its purpose of securing a fair trial for the defendant.

insure that this evidence does not become known to the jury. Cf. *Jackson* v. *Denno*, 378 U. S. 368. Publicity concerning the proceedings at a pretrial hearing, however, could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial.

*DePasquale,* at 378.

Because of the difficulty in determining the actual effects of such publicity on the fairness of the trial, the majority said that closure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun.

It was there contended that the public, including the press, had a right under the Sixth Amendment, which provides for an open trial, to attend the hearing. That right, the opinion said, was a right of the defendant alone, and nowhere in the constitution or in the common law could there be found a right on the part of the public to attend a pretrial hearing.

While this court has found a right of the public to attend a pretrial hearing, under the language of Const. art. 1, § 10, that right is qualified by the court's right and duty to see that the defendant has a fair trial. *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 615 P.2d 440 (1980). The court may order closure if the objectors fail to demonstrate the availability of some practical alternative.

Here the court found that the only alternatives which could conceivably be effective in protecting the defendant's rights were to either close the hearing or exact a commitment from the members of the media to abide by the Bench–Bar–Press Guidelines.

The Bench–Bar–Press Guidelines, insofar as they are relevant here, are set forth in the appendix to this opinion. They are, by definition, not a set of rules but rather principles which guide the courts, lawyers and court personnel, as

well as the media, in protecting the rights of an accused and other litigants to a fair trial, while at the same time respecting and preserving the freedoms of speech and press guaranteed by the state and federal constitutions. Under their express provisions, they honor the right of the news media to report what occurs in the course of the judicial proceeding.

As was pointed out by Justice Finley in his concurring opinion in *State ex rel. Superior Court v. Sperry,* 79 Wn.2d 69, 483 P.2d 608 (1971), responsible exercise of constitutional freedoms, with regard for the constitutional rights of accused persons and other litigants, is the essence of the guidelines.

It is true that these guidelines suggest the exercise of caution in reporting matters which may be damaging to the right of an accused to a fair trial, at a time when that risk is greatest—that is, prior to the trial. Ordinarily, members of the media who have declared their adherence to the guidelines do exercise restraint in such reporting, but it had been the experience of the trial judge here that mere oral commitment had not sufficed to produce that restraint. He recognized that by admitting members of the press to such a sensitive proceeding, even upon their written agreement to be guided by these standards, he was placing the defendant's interests in some jeopardy. Yet he was willing to try this method of securing compliance, as an experiment, to see if it would be effective in protecting the defendant while at the same time allowing the public, including the media, to attend the hearing. As we view this measure, it was a good faith attempt to accommodate the interests of both defendant and press which, hopefully, would prove both practical and effective as an alternative to closure.

The petitioner's objection to the ruling is grounded upon its fear that, should it publish reports of the hearing, it would be subject to contempt proceedings. Whether the contempt power of the court could in other circumstances properly extend to punishment for alleged violation of an agreement to adhere to a set of standards as nonobligatory

as these is a question which has not been briefed and which we need not decide. It would, however, be contrary to the spirit and intent of the Bench–Bar–Press Guidelines to invoke such a remedy for their alleged violation, and the comments of the lower court in making its ruling indicate that the court was in agreement with that principle. It issued no orders prohibiting publication, nor did it threaten any sanctions if a person signing an agreement to abide by the guidelines should thereafter ignore them. Its ruling was simply that any media member not willing to put his moral commitment in writing would be excluded from the hearing.

Inasmuch as the court had the authority, under our holding in *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 615 P.2d 440 (1980), to exclude all of the public, including the media, it had also the included power to impose reasonable conditions upon attendance. The exaction of an agreement to abide by standards which have gained the approval of all of the media of mass communications in this state was not unreasonable, particularly in view of the fact that the commitment is a moral one, even when expressed in writing, and not enforceable in a court of law.

The procedure may not prove effective, and it may be that in cases of this kind the rights of the defendant can be secured only by closing the suppression and CrR 3.5 hearings; but it would be a disservice to the public, as well as the media, to declare that a lesser measure, as innocuous as that employed here, is beyond the reach of a court attempting in good faith to accommodate the rights of all concerned.

That reasonable limitations may be imposed upon attendance at a judicial proceeding was recognized in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814 (1980) (Mr. Justice White, concurring). In a footnote at page 581, he said:

> Just as a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic, see,

*e. g., Cox* v. *New Hampshire,* 312 U. S. 569 (1941), so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial.

Our conclusion is that the limitation imposed here was a reasonable one, and the petition is accordingly denied.

### APPENDIX

### BENCH–BAR–PRESS PRINCIPLES AND GUIDELINES 1974

#### PREAMBLE

The Bench, Bar and Press (comprising all media of mass communications) of Washington:

(a) Recognize that freedom of news media is one of the fundamental liberties guaranteed by the First Amendment of the Constitution of the United States and that this basic freedom must be zealously preserved and responsibly exercised.

(b) Are obliged to preserve the principle of the presumption of innocence for those accused of a crime until there has been a finding of guilt in an appropriate court of justice.

(c) Believe members of an organized society have the right to acquire and impart information about their mutual interests. The right to disseminate information should be exercised with discretion when public disclosures might jeopardize the ends of justice.

(d) Have the responsibility to support the free flow of information, consistent with the principles of the Constitution and this Preamble.

To promote a better understanding between the Bench and Bar of Washington and the Washington News Media, particularly in their efforts to reconcile the constitutional guarantee of freedom of the press and the right to a fair, impartial trial, the following statement of principles mutually drawn and submitted for voluntary compliance, is recommended to all members of these professions in Washington.

#### PRINCIPLES

1. The News Media have the right and responsibility to print the truth. A free and responsible news media enhances the administration of justice. Members of the Bench and Bar should, within their respective codes of conduct and professional responsibility, cooperate with the news media in the reporting of the administration of justice.

2. Parties to litigation have the right to have their causes tried fairly

by an impartial tribunal. Defendants in criminal cases are guaranteed this right by the Constitutions of the United States and the various states.

3. No trial should be influenced by the pressure of publicity from news media nor from public clamor, and lawyers and journalists share the responsibility to prevent the creation of such pressures.

4. All news media should strive for objectivity and accuracy. The public has a right to be informed. The accused has a right to be judged in an atmosphere free from undue prejudice.

5. The news media recognizes the responsibility of the judge to preserve order in the court and to seek the ends of justice by all those means available to him.

6. Decisions about handling the news rest with editors, but in the exercise of news judgments the editor should remember that:

(a) An accused person is presumed innocent until proven guilty.

(b) Readers and listeners and viewers are potential jurors.

(c) No person's reputation should be injured needlessly.

7. The public is entitled to know how justice is being administered. However, no lawyer should exploit any medium of public information to enhance his side of a pending case. It follows that the public prosecutor should avoid taking unfair advantage of his position as an important source of news; this shall not be construed to limit his obligation to make available information to which the public is entitled.

8. Proper journalistic and legal training should include instruction in the meaning of constitutional rights to a fair trial, freedom of press, and the role of both journalist and lawyer in guarding these rights.

### Guidelines for the Reporting of Criminal Proceedings

The proper administration of justice is the responsibility of the judiciary, bar, the prosecution, law enforcement personnel, news media and the public. None should relinquish its share in that responsibility or attempt to override or regulate the judgment of the other. None should condone injustices on the ground that they are infrequent.

The greatest news interest is usually engendered during the pretrial stage of a criminal case. It is then that the maximum attention is received and the greatest impact is made upon the public mind. It is then that the greatest danger to a fair trial occurs. The bench, the bar and the news media must exercise good judgment to balance the possible release of prejudicial information with the real public interest. However, these considerations are not necessarily applicable once a jury has been empaneled in a case. It is inherent in the concept of freedom of the press that the news media be free to report what occurs in public proceedings, such as criminal trials. In the course of the trial it is the responsibility of the bench to take appropriate measures to insure that the deliberations of the jury are based upon what is presented to them in court.

These guidelines are proposed as a means of balancing the public's right to be informed with the accused's right to a fair trial before an impartial jury.

1. It is appropriate to make public the following information concerning the defendant:

(a) The defendant's name, age, residence, employment, marital status, and similar background information. there should be no restraint on biographical facts other than accuracy, good taste and judgment.

(b) The substance or text of the charge, such as complaint, indictment, information or, where appropriate, the identity of the complaining party.

(c) The identity of the investigating and arresting agency and the length of the investigation.

(d) The circumstances immediately surrounding an arrest, including the time and place of arrest, resistance, pursuit, possession and use of weapons, and a description of items seized at the time of arrest.

2. The release of certain types of information by law enforcement personnel, the bench and bar and the publication thereof by news media generally tends to create dangers of prejudice without serving a significant law enforcement or public interest function. Therefore, all concerned should be aware of the dangers of prejudice in making pretrial public disclosures of the following:

(a) Opinions about a defendant's character, his guilt or innocence.

(b) Admissions, confessions or the contents of a statement or alibis attributable to a defendant.

(c) References to the results of investigative procedures, such as fingerprints, polygraph examinations, ballistic tests, or laboratory tests.

(d) Statements concerning the credibility or anticipated testimony of prospective witnesses.

(e) Opinions concerning evidence or argument in the case, whether or not it is anticipated that such evidence or argument will be used at trial.

Exceptions may be in order if information to the public is essential to the apprehension of a suspect, or where other public interests will be served.

3. Prior criminal charges and convictions are matters of public record and are available to the news media through police agencies or court clerks. Law enforcement agencies should make such information available to the news media after a legitimate inquiry. The public disclosure of this information by the news media may be highly prejudicial without any significant addition to the public's need to be informed. The publication of such information should be carefully reviewed.

4. Law enforcement and court personnel should not prevent the photographing of defendants when they are in public places outside the courtroom. They should not encourage pictures or televising nor should they pose the defendant.

5. Photographs of a suspect may be released by law enforcement per-

sonnel provided a valid law enforcement function is served thereby. It is proper to disclose such information as may be necessary to enlist public assistance in apprehending fugitives from justice. Such disclosure may include photographs as well as records of prior arrests and convictions.

6. The news media are free to report what occurs in the course of the judicial proceeding itself. The bench should utilize available measures, such as cautionary instructions, sequestration of the jury and the holding of hearings on evidence after the empaneling of the jury, to insure that the jury's deliberations are based upon evidence presented to them in court.

7. It is improper for members of the bench–bar–news media or law enforcement agencies to make available to the public any statement or information for the purpose of influencing the outcome of a criminal trial.

8. Sensationalism should be avoided by all persons and agencies connected with the trial or reporting of a criminal case.

STAFFORD, HICKS, WILLIAMS, and DORE, JJ., concur.

DOLLIVER, J. (dissenting)—The document Judge Swedberg required a member of the press to sign before being admitted to the courtroom is as follows:

BENCH–BAR–PRESS
GUIDELINES FORM

This form is for the use of all media representatives planning to attend the hearing in State v. Veronica Lynn Compton, Whatcom County Cause No. 80–1–00322–7, to be held at 1:30 p.m. in Department No. 2 of the Whatcom County Superior Court on the 19th day of December, 1980.

1. I have read the Bench–Bar–Press Guidelines of 1974, which are attached to this form.

2. If I have not yet read the Bench–Bar–Press Guidelines that are attached to this form, I shall do so before I report in any manner on the hearing of the above–mentioned matter.

3. I agree to follow the Bench–Bar–Press Guidelines of 1974 in any reporting of the proceedings in the above–captioned matter at the hearing scheduled on the 19th day of December, 1980, in Department No. 2 of the Whatcom County Superior Court at 1:30 p.m.

4. As a representative of _____, I am authorized to bind my news agency to follow the Bench–Bar–Press Guidelines.

DATED THIS_____ day of December, 1980.

_____
(Signature)

In *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 615 P.2d 440 (1980), the court held that under certain circumstances the public could be excluded from a pretrial suppression hearing. The majority here indicates that if the court has the authority to exclude, it certainly has "the included power to impose reasonable conditions upon attendance." Majority opinion, at 22. Even if this is so— which I do not concede—it is not a "reasonable condition" for admittance to a courtroom for a judge to limit what a newspaper may print or a radio or television station may broadcast. *See State ex rel. Superior Court v. Sperry,* 79 Wn.2d 69, 483 P.2d 608 (1971). This action by the court compelling certain action by the press before it is allowed to exercise its First Amendment rights is prior restraint. *See State v. Allen,* 73 N.J. 132, 373 A.2d 377 (1977); *Keene Publishing Corp. v. Cheshire County Superior Court,* 119 N.H. 710, 406 A.2d 137 (1979). Before prior restraint can be invoked by a court, there is, as the majority correctly notes, a heavy burden on the trial court of showing justification for the restraint. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976).

Whether this case is characterized as a *Federated Publications, Inc. v. Kurtz* case as does the majority, or a prior restraint case, as I believe is correct, the burden for closure of the courtroom or prior restraint was not met by the trial judge. There is no question but that the Compton case generated considerable local interest and received and would continue to receive substantial news coverage. However, there is nothing in the record, nor an allegation or showing to the trial judge, that any of the news coverage of the case had been or was likely to become sensational in nature or that anything had been published in violation of the Bench–Bar–Press Guidelines.

Even the majority at page 18 seems to be aware that there is no factual basis for the trial judge's ruling:

The trial judge undoubtedly had these considerations in mind [those considerations spelled out by the majority, but not by the trial judge] when he found that publicity with respect to the evidence considered at the suppression hearing would prejudice the defendant's right to a fair trial and that there was no feasible alternative to complete closure, other than partial closure.

Assuming this is a closure case, what are the standards which must be met by the trial court? The guidelines are set out in *Federated Publications, Inc. v. Kurtz, supra* at 62–65. Guideline 4 is particularly in point:

The court must weigh the competing interests of the defendant and the public. In the present case, the court, in granting the closure motion, entered findings which detailed the prejudicial nature of the evidence sought to be suppressed, the prior publication of damaging ballistics evidence (which resulted in the change of venue), and the fact of Herald circulation in Skagit County. In their arguments in support of the closure motion, both the prosecuting attorney and defense counsel emphasized to the court their recognition of the need for public dissemination of information along with their fear that an impartial jury could not be found if the suppression hearing testimony were published. In our view, the trial judge gave due consideration to both sides before he made his ruling.

*Federated Publications, Inc. v. Kurtz, supra* at 64.

A review of the record in *Kurtz* shows there were extensive and detailed findings of fact, plus attached exhibits which enabled the trial court to engage in the required "weigh[ing of] the competing interests of the defendant and the public.'" *Kurtz,* at 66.

In the case before us, there was the following: (1) In its oral opinion, the trial court made the conclusory statements that

the likelihood of jeopardy to a fair trial is overwhelmingly established . . . [T]he usual methods to protect a fair trial such as voir dire, peremptory challenges and others is not an adequate safeguard.

(2) The only other relevant document is the "Order on

Omnibus Motions" which reads in its entirety:

THIS MATTER having come on regularly before the above–entitled Court on the 19th day of December, 1980, and the defendant, VERONICA LYNN COMPTON, being personally present, and represented by her attorney, WILLIAM JOHNSTON, and the State of Washington being represented by DAVID S. MCEACHRAN, Prosecuting Attorney in and for Whatcom County, State of Washington, and the Court having heard argument of counsel, and being fully advised in the premises, now, therefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant's motion to continue the trial in the above–captioned matter shall be and is hereby granted, and the trial shall be set for March 9 through March 20, 1981, in Department No. 2 of the above–entitled Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant's motion to obtain certified copies of a search warrant, affidavit, and return shall be and is hereby granted.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the laws of the State of Washington shall apply to the search and seizure of items in the defendant's residence in the State of California, and also to any statements the defendant made to police officers in the State of California.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant's motion to reduce the bail set in this matter shall be and is hereby denied.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant's motion for closure of the pre–trial hearing relating to statements made by defendant and testimony argument relating to the motion to suppress shall be and is hereby denied, pursuant to the following restrictions:

1. Representatives of the news media shall be allowed to attend this hearing if they sign a form indicating that they have read and understand the Bench–Bar–Press Guidelines of 1974, and will follow those guidelines in reporting on the hearing in this case.
2. Those representatives of the news media who will not agree to signing such a form shall not be permitted to attend this hearing.

These statements and order by the trial court do not

even come close to meeting our requirements in *Federated Publications, Inc. v. Kurtz, supra,* for the closure of a courtroom in a suppression hearing. Much less do they meet the standards of the United States Supreme Court for prior restraint as articulated in the *Nebraska Press Ass'n* case. *See Keene Publishing Corp. v. Cheshire County Superior Court, supra.* This court should not allow the great freedoms of the First Amendment and Const. art. 1, § 10 to be traduced in this manner.

While I believe on the merits the plaintiff should prevail, my preference for disposition of this case would be to declare the entire matter moot. As is pointed out by the majority, the trial in question has been held so what we say here will be meaningless in that context. As to the contention that this is a dispute "capable of repetition, yet evading review" (*see Nebraska Press Ass'n v. Stuart, supra* at 546), I doubt that this is so. Rather, I prefer to believe that an atmosphere of mutual regard for the right of access to courtrooms, the right of free speech and the rights of defendant may have developed in Whatcom County, and that we would better serve that county and its citizens, as well as those in other counties, by refusing to decide a case that need not be decided.

I dissent.

BRACHTENBACH, C.J., and UTTER and DIMMICK, JJ., concur with DOLLIVER, J.

Reconsideration denied December 24, 1981.