504 So.2d 378 (1987)
PALM BEACH NEWSPAPERS, INC.; the Miami Herald Publishing Company; and News and Sun Sentinel Company, Petitioners,
v.
The Honorable Richard Bryan BURK, Linda Aurilio and State of Florida, Respondents.
No. 67352.
Supreme Court of Florida.
February 19, 1987.
Rehearing Denied April 21, 1987.
Donald M. Middlebrooks, L. Martin Reeder, Jr., Thomas R. Julin and Norman Davis of Steel, Hector & Davis, Parker D. Thomson, Sanford L. Bohrer, Jerold I. Budney and Gene A. Turk, Jr. of Thomson, Zeder, Bohrer, Werth, Adorno & Razook, Richard J. Ovelmen, Miami, and Janice Burton Sharpstein and Laura Besvinick of Sharpstein & Sharpstein, Coconut Grove, and Ray Ferrero, Jr., Wilton L. Strickland and Ricki Tannen of Ferrero, Middlebrooks, Strickland and Fischer, P.A., Ft. Lauderdale, for petitioners.
Robert A. Butterworth, Jr., Atty. Gen., and Louis F. Hubener and Mark C. Menser, Asst. Attys. Gen., Tallahassee, and Richard L. Jorandby, Public Defender, Fifteenth Judicial Circuit, and Margaret Good, Asst. Public Defender, West Palm Beach, for respondents.
*379 George K. Rahdert of Rahdert, Anderson & Richardson, St. Petersburg, for amicus curiae, Times Pub. Co.
PER CURIAM.
We review Palm Beach Newspapers, Inc. v. Burk, 471 So.2d 571 (Fla. 4th DCA 1985), wherein over the objection of both the prosecutor and the accused, petitioners (the press) sought to be present at pretrial discovery depositions and to obtain copies of depositions which had not been transcribed or filed with the trial court. The trial judge ruled, essentially, that the taking of depositions was not a judicial proceeding and there was no right of access by the public or press until such depositions were filed with the court. On appeal, the district court (en banc) held that the press has no constitutional, first amendment, right of access to the taking of pretrial depositions in a criminal case and the right of access to depositions did not accrue until they were filed with the clerk of the court. On its own motion, the district court certified two questions of great public public importance:
1. IS THE PRESS ENTITLED TO NOTICE AND THE OPPORTUNITY AND RIGHT TO ATTEND PRETRIAL DISCOVERY DEPOSITIONS IN A CRIMINAL CASE?
2. IS THE PRESS ENTITLED TO ACCESS TO PRETRIAL DISCOVERY DEPOSITIONS IN A CRIMINAL CASE WHICH MAY OR MAY NOT HAVE BEEN TRANSCRIBED BUT WHICH HAVE NOT BEEN FILED WITH THE CLERK OF COURT OR THE JUDGE?
Id. at 579. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer both questions in the negative, and approve the decision of the district court below.
We have reviewed and considered briefs from the three petitioners, an amicus curiae brief from the Times Publishing Company in support of petitioners, and answer briefs from respondents. All together, the briefs and appendices comprise hundreds of pages. We do not consider it necessary or desirable to address every point raised in support of the opposing views, but have identified three critical points worthy of comment:
1. Does the press have a qualified right under the first amendment to the United States Constitution to attend pretrial discovery depositions and to obtain copies of unfiled depositions?
2. Does the press have a qualified right under Florida rules of discovery to attend pretrial discovery depositions and to obtain copies of unfiled depositions?
3. Does the press have a qualified right to obtain copies of unfiled depositions under section 119.07, Florida Statutes (1985)?
Petitioners cite a series of opinions from the United States Supreme Court and this Court, the rationale of which, petitioners urge, supports the broad proposition that under the United States Constitution criminal pretrial proceedings are presumptively open to the public. Consequently, petitioners urge, the press may not be barred unless there is a showing of an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. Petitioners acknowledge that none of the cases, with one exception, dealt with the discovery process but argue by analogy that access to pretrial discovery is critical to freedom of the press because an overwhelming majority of criminal prosecutions are resolved pretrial. Without such access, petitioners urge, the public will be denied critical information on the criminal justice system. In essence, petitioners are asking that public access to criminal trials be expanded to include the criminal discovery process. For the reasons which follow we decline to do so.
The question of public access to pretrial criminal proceedings directly implicates a variety of constitutional rights: the due process right to a fair trial under the fifth and fourteenth amendments; the rights to a speedy and public trial by an impartial jury in the venue where the crime was allegedly committed under the sixth amendment; the rights of the public and press under the first amendment; and the privacy rights of the accused and other trial *380 participants under the first amendment and article I, section 23 of the Florida Constitution. It also implicates the state's interest in inhibiting disclosure of sensitive information and the right of the public to a judicial system which effectively and speedily prosecutes criminal activities. It is the balance between these rights which is at issue. The United States Supreme Court has addressed the relationship between these various constitutional provisions as they apply to specific stages of criminal proceedings. For our frame of reference, we now turn to this body of case law.
In Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), the accused, with the acquiescence of the state, persuaded the trial court to deny press and public access to a pretrial suppression hearing because the buildup of adverse publicity jeopardized the defendant's right to a fair trial. On review, the Court acknowledged that the sixth amendment permits and presumes open trials as a norm, but "there exists no persuasive evidence that at common law members of the public had any right to attend pretrial proceedings; indeed, there is substantial evidence to the contrary." Id. at 387, 99 S.Ct. at 2909. This was so, the Court reasoned, because public access to pretrial proceedings may pose a hazard to the fairness of the trial and, under the sixth amendment, public trials were clearly associated with the protection of the accused, not with an independent right of the public to attend trials. The Court declined to decide whether there was a first and fourteenth amendment right to attend criminal trials. Instead, the Court assumed, arguendo, that there was such a right and held that the trial court, under the circumstances of the case, had properly balanced the right of the accused to a fair trial against the right of the press and public to have access to pretrial proceedings.
It is clear from Gannett that where a defendant's right to a fair trial conflicts with the public's right of access, it is the right of access which must yield. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), makes clear, however, that while a defendant, generally, may compel a public trial, there is no similar right to a private trial. There, the accused, with the concurrence of the state, succeeded in closing the trial itself. The United States Supreme Court recognized that there was no explicit constitutional provision that the public had a right to attend trials. Nevertheless, because of the common law history of public access to trials and the importance of such access to the commonwealth, the Court held
that the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and "of the press could be eviscerated." Branzbureg, [v. Hayes], 408 U.S., [665] at 681, 92 S.Ct., [2646] at 2656 [33 L.Ed.2d 626 (1972)].
Id. at 580, 100 S.Ct. at 2829, footnote omitted.
In Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (Press-Enterprise I), the trial court closed six weeks of jury voir dire and refused press requests for a transcript of the jury selection proceedings. The purported reasons for closure were the right of the defendant to a fair trial and the right of the prospective jurors to privacy. The United States Supreme Court noted that jury selection had been presumptively open to the public in England and in Colonial America when the Constitution was adopted. Thus, the Court reasoned, open jury selection was a component of an open trial which
enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.
Id. at 508, 104 S.Ct. at 823. The Court held that it was error to close the proceedings and totally suppress the transcript because there were no findings that the right to a fair trial and privacy interest were threatened and there was a failure to consider alternatives to closure of the jury selection and suppression of the transcript.
*381 In Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the trial court closed a pretrial suppression hearing over the objection of the accused. The United States Supreme Court reasoned that suppression hearings often resemble a bench trial and often are as important, if not more so, than the trial itself. Moreover, because motions to suppress often challenge the conduct of the police and prosecutor, the "public in general also has a strong interest in exposing ... police misconduct." Id. at 47, 104 S.Ct. at 2216. Although Waller did not present the issue of the public's right of access to suppression hearings, the Court noted that in Gannett "a majority of the Justices concluded that the public had a qualified constitutional right to attend such hearings." Waller 467 U.S. at 45, 104 S.Ct. at 2215. Accordingly, the Court held that under the sixth amendment any closure of suppression hearings over the objection of the accused must be justified by a showing under the Press-Enterprise I test of "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press-Enterprise I, 464 U.S. at 510, 104 S.Ct. at 824.
In Press-Enterprise Co. v. Superior Court, ___ U.S. ___, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (Press-Enterprise II), at the request of the accused, the trial court closed a forty-one day preliminary hearing wherein the state presented evidence of probable cause. Over the objection of the state and the press, the trial court also sealed the record of the hearing. The trial court ruling was upheld by the California Supreme Court on the grounds there was no general first amendment right of access to preliminary hearings and that closure of the hearing and sealing of the record was necessary because of a reasonable likelihood of substantial prejudice impinging upon the right to a fair trial. On review, the United States Supreme Court reversed, concluding that the first amendment right of access to criminal trials was applicable to preliminary hearings as conducted in California. This was so, the court reasoned, because open preliminary hearings have been the near uniform practice in both federal and state courts and because preliminary hearings on probable cause as conducted in California are essential to the proper functioning of the criminal justice system. On the latter point, the Court noted the elaborateness of the California preliminary hearing, its similarities to a trial, the fact that it was often the final, most important step in a criminal proceeding, and was often the only opportunity for public access to the proceeding.
Petitioners also rely on the decisions of this Court in Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), and State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1976). In McIntosh, the trial court entered a classic prior restraint order prohibiting the publication of any evidence which had not been presented in open court in the presence of the jury. Relying heavily on Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), we held that the order was invalid. In Lewis, relying on Gannett and Richmond, we held there was no first amendment right "to attend pretrial suppression hearings as distinguished from the right to attend a criminal trial." Lewis, 426 So.2d at 6.[1] Nevertheless, because of our concern for open government and our belief that public access was an important part of the criminal justice system, we recognized a nonconstitutional right of access and established a three-pronged test to balance the need for public access to a pretrial suppression hearing against the paramount right of the accused to a fair trial. Essentially, the test established a presumption of openness and placed the burden on those seeking closure to show that closure of the hearing was necessary. Neither Lewis nor McIntosh suggests that discovery depositions *382 should be open to the public as a component of a criminal trial.
Having established a proper frame of reference, we now focus on the press's right of access to discovery depositions. Our conclusion that the press does not have a first amendment right to be present at discovery depositions or to obtain copies of depositions which are not filed with the court finds support in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In Seattle Times, Rhinehart brought a defamation action against, inter alia, the Seattle Times. The Seattle Times sought extensive discovery which Rhinehart opposed on the grounds that the discovery violated first amendment rights to privacy, freedom of religion, and freedom of association. The trial court granted a motion to compel discovery but also issued a protective order prohibiting the Seattle Times from publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case. The order did not apply to information which the Seattle Times might gather outside the discovery process. On review, the United States Supreme Court upheld the protective order. We appreciate that Seattle Times, unlike the present case, involved a civil suit and that it dealt with the validity of a protective order. Nevertheless, we believe the rationale of Seattle Times is applicable to criminal prosecutions and to the issue of access by non-parties to discovery proceedings and is consistent with Gannett, Richmond Newspapers, Press-Enterprise I, Waller, and Press-Enterprise II.
We summarize the rationale of Seattle Times as follows. The discovery rights of parties under modern practice is very broad. Discovery may be had on any nonprivileged matter which is relevant to the subject matter of the pending action. It is not limited to evidence which will be admissible at trial so long as the information sought is reasonably calculated to lead to the discovery of admissible evidence. There is no distinction drawn between private information and that to which no privacy interests attach. Discovery rules permit extensive intrusion into the affairs of both parties and non-parties and discovery may be judicially compelled. Liberal discovery produces information which may be irrelevant to the trial and which, if publicly released, would be damaging to the reputation and privacy of both parties and non-parties. The parties are granted discovery rights as a matter of legislative or judicial grace. Non-parties do not possess discovery rights and cannot compel the disclosure of information. There is no independent right outside the trial process to the information sought. Society in general, and the courts specifically, has a substantial interest in preventing abuse of judicially compelled discovery. Deposition proceedings are not public components of a trial unless made so by the parties. Such proceedings were not open to the public at common law and, as a matter of modern practice, are normally conducted in private. Thus, restrictions on discovered information which has not been admitted at trial are not restrictions on a traditionally public source of information.
In our view, Seattle Times furnishes guidance applicable to the case at hand. Properly read, the defendant Seattle Times should be regarded as wearing two hats. In its role as defendant, it was entitled to the liberal discovery right of a party. However, "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." 467 U.S. at 34, 104 S.Ct. at 2208. In its role as a newspaper, the Seattle Times was treated as a non-party to the suit and had no independent constitutional right to have access to the discovery process or to use the information which it discovered in its role as a party. Essentially, the protective order denied Seattle Times, in its role as a newspaper, access to the discovery process.
Petitioners cite Seattle Times for the proposition that parties who wish to deny access to a deposition proceeding should be required to obtain a protective order. We disagree. Because the Seattle Times was treated as both a party and a non-party and thus had access to information *383 which it discovered as a party, it was necessary for the trial court to issue a protective order. Absent its party status Seattle Times was accorded no independent first amendment right to the discovery process or to discovered information. Given this holding, we do not see how it can be plausibly argued that the press has a first amendment right to be present at deposition proceedings or to obtain access to such depositions prior to their being introduced at trial or become the subject of a suppression hearing. The "right to speak and publish does not carry with it the unrestrained right to gather information." Zemel v. Rusk, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965).
Based on our analysis of the above cases, we are satisfied that there is no affirmative constitutional right on the part of the press to attend deposition proceedings or to have access to depositions prior to their being filed with the court. Petitioners urge, however, that we adopt a more expansive view of the first amendment than is suggested by the case law. We decline. The rationale of Seattle Times suggests that public access to discovery information at the moment it is first discovered presents unacceptable hazards to other constitutional rights because of uncertainty as to the nature and content of the information. The purpose of depositions is to develop evidence by discovering what potential witnesses may know about the subject of the trial. It is not possible beforehand to know with any degree of certainty what information will be discovered. In this respect, a deposition proceeding is unlike a pretrial suppression hearing or a preliminary hearing on probable cause where the parties and the court know beforehand what will be discussed. Thus, it is not feasible for a potential witness, for example, to seek a protective order in advance of the deposition and it is too late to do so if the information becomes public knowledge. The often irrelevant and inadmissible evidence discovered during a deposition has the substantial potential of hazarding the right to a fair trial, the privacy rights of both parties and non-parties, and the right to a trial in the venue of the alleged crime. Aside from the impracticability of seeking protective orders beforehand, seeking such orders "would necessitate burdensome evidentiary findings and could lead to timeconsuming interlocutory appeals." Seattle Times, 467 U.S. at 36, n. 23, 104 S.Ct. at 2209 n. 23. The effect such a procedure would have on the speedy trial rights of the accused and public is obvious. Moreover, it would not serve the purpose of criminal discovery  assisting in the trial or resolution of criminal charges  and would carry us even farther from the central aim of a criminal trial  trying the accused fairly. We hold there is no first amendment right of public access to criminal deposition proceedings or to unfiled depositions in criminal prosecutions.
Petitioners further urge that, notwithstanding the success or failure of their constitutional argument, they have a qualified right under Florida criminal and civil rules of procedure to attend discovery depositions and to obtain copies of unfiled depositions. Largely for the same reasons as set forth above, we do not agree that the press has a qualified right under the rules of procedure to attend deposition proceedings.
We note that discovery depositions were not permitted until authorized by the rules of criminal procedure. The procedure for taking such depositions is largely controlled by the Florida Rules of Civil Procedure. See Fla.R.Crim.P. 3.220(d). The deposition need not be taken before a court reporter or anyone who may be called an officer of the court: "If the parties so stipulate in writing, depositions may be taken before any person at any time or place upon any notice and in any manner... ." Fla.R.Civ.P. 1.300(c). There is nothing in the rules that requires the parties to have a deposition transcribed or to prevent them from agreeing that the person reporting the deposition destroy his or her notes. A deposition is nothing more than a statement of a witness taken under oath in accordance with the rules. As the Seattle Times Court said, "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the *384 settlement, of litigated disputes." 467 U.S. at 34, 104 S.Ct. at 2208. Open access would not serve this purpose. The discovery rules are aimed at protecting the rights of the parties involved in the judicial proceeding and of non-parties who are brought into the proceedings because of purported knowledge of the subject matter. Transforming the discovery rules into a major vehicle for obtaining information to be published by the press even though the information might be inadmissible, irrelevant, defamatory or prejudicial would subvert the purpose of discovery and result in the tail wagging the dog.
Finally, petitioners suggest that our commitment to opening the judicial process as enunciated in Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), coupled with a "mere reference" to Florida's Public Record's Law, Chapter 119 Florida Statutes (1983), mandates press access to unfiled depositions. We disagree with this contention. As previously discussed we found in Lewis that there was no constitutional right of press access to pretrial suppression hearings. Our commitment to opening the judicial process to such hearings was predicated on the fact that suppression hearings were judicial proceedings and we, therefore, provided a method for press participation because the public has "a right to know what occurs in the courts." 426 So.2d at 6-7. Discovery depositions are judicially compelled for the purpose of allowing parties to investigate and prepare their case, but, unlike a suppression hearing, they are not judicial proceedings "for the simple reason that there is no judge present, and no rulings nor adjudications of any sort are made by any judicial authority." Tallahassee Democrat, Inc. v. Willis, 370 So.2d 867, 872 n. 4 (Fla. 1st DCA 1979). We agree with the holding in Willis that once a transcribed deposition is filed with the court pursuant to Rule 1.400 Fla.R.Civ.P., it is open to public inspection. Id. at 870-871. See also Ocala Star Banner Corp. v. Sturgis, 388 So.2d 1367 (Fla. 5th DCA 1980).
We find nothing in chapter 119 which would point toward the blanket access to unfiled depositions advocated by petitioners.[2] We find that neither chapter 119 nor our commitment to an open judicial process can be applied to unfiled depositions. In addition to the compelling reasons which militated against a constitutional right of access, providing such access would severely undermine our adversarial system. As was aptly stated by the district court below, "a lawyer would be remiss in not making pretrial inquiry of witnesses where he has reason to think that they may have knowledge of some kind concerning the alleged crime." 471 So.2d at 578. Because counsel should be unfettered to explore all matters and depose all witnesses which may be of use in his case, the process by which such information is gathered must be as free from chilling influences as possible. Providing access to unfiled depositions under the guise of chapter 119 or our commitment to opening the judicial process would not only present serious constitutional concerns for both the accused and innocent third parties, it would also undermine effective advocacy, as counsel may be inhibited from asking certain questions fearing that damaging or prejudicial information may be published before trial.
Accordingly, we answer the certified questions in the negative and approve the decision of the district court below.
It is so ordered.
McDONALD, C.J., OVERTON and EHRLICH, JJ., and ADKINS, J., (Ret.), concur.
SHAW, J., concurs in part and dissents in part with an opinion.
*385 SHAW, Justice, concurring in part and dissenting in part.
I agree almost entirely with the majority opinion. However, for the following reasons, I would hold that reporter notes or unfiled transcriptions of depositions which are available to the accused in a criminal prosecution are public records which are presumptively available for examination or copying under section 119.07(1)(b), Florida Statutes (1985). First, chapter 119 establishes "[i]t is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." § 119.01(1). Second, section 119.011(3)(c)(5) specifically provides, with exceptions not pertinent here, that documents held by the prosecution which are given, or required by law to be given, to the accused will not be exempted from the definition of public records which are subject to examination by any person.[*] Third, after the deposition is taken, the parties and non-party deponents are aware of the contents of the deposition and are in a position to show cause, if any exists, why a protective order should be issued. Fourth, the trial of the case need not be delayed while the court considers whether to issue a protective order. Fifth, the evidentiary hearing on the protective order should be relatively simple. The balance to be struck is between the rights to a fair trial and privacy, on the one hand, and the statutory right of access to the public record, on the other hand. Sixth, the parties agree that depositions which are filed with the court become a public record subject to public access; Florida Rule of Civil Procedure 1.400; Tallahassee Democrat, Inc. v. Willis, 370 So.2d 867 (Fla. 1st DCA 1979). Because Florida Rule of Civil Procedure 1.310(f) does not require that all depositions be transcribed or filed, the district court held that no right of access accrues until there is a filing. For the purposes of defining public records and permitting public access, I agree with Chief Judge Anstead's dissenting comment below that public access should not turn on whether a deposition is transcribed or filed. Once protection against the invasion of the right to a fair trial and privacy are in place, I see no reason why the court reporter's notes or the unfiled transcription should not be treated as a public record, provided the information has been furnished, or should have been furnished, to the defendant pursuant to rule 3.220. Finally, public access to unfiled or untranscribed depositions as outlined above would be supportive of our policy announced in Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), of opening the judicial process to the public to the maximum degree consistent with decorum and the constitutional rights of the participants.
NOTES
[1] Dicta in the later Waller case indicated a majority of the members of the court in Gannett had individually expressed the view that the public had a qualified constitutional right to attend pretrial suppression hearings. These individual views appear to have coalesced in Press Enterprise II.
[2] If, in fact, chapter 119's provisions were intended to encompass all unfiled depositions, serious separation of powers concerns would be raised. Satz v. Blankenship, 407 So.2d 396 (Fla. 4th DCA 1981), review denied, 413 So.2d 877 (Fla. 1982), recognized that, under section 119.011(3)(c)(5), once documents are required to be given to an arrested person, the disclosed documents become "public in a sense." 407 So.2d at 398. We find this to be a narrow and specific situation which is in accord with the analysis employed in Willis.
[*] Florida Rule of Criminal Procedure 3.220 requires that the prosecutor furnish the accused with the names and addresses of all persons known to the prosecutor who have relevant information and with any statements made by those persons.