COPE, J.
(dissenting from the denial of a motion for rehearing and certification of question).
Two questions are presented by this case. First, does a marital settlement agreement become a public record when the trial judge reviews it, initials it, and makes findings about it during a dissolution of marriage proceeding, even though it is handed back to the parties and never filed of record? The answer to that question is yes, unless the husband and wife can demonstrate the existence of an applicable exemption to the public records constitutional provision. See Art. I, § 24(a), Fla. Const.
Second, in the situation just described, what is the correct procedure for the press or a member of the public to obtain access to the marital settlement agreement? The prevailing view is that such a document may be requested by filing a motion in the matrimonial case, and requesting leave to intervene for that purpose. We should grant rehearing and certification.
I. Procedural Background
Rush Limbaugh, the husband, and Marta Miranda, the wife, decided to dissolve their marriage. With the advice of their respective counsel, they signed a twenty-two-page marital settlement agreement.
The husband filed a petition for dissolution of marriage in the Circuit Court for Monroe County in Key West on December 21, 2004. The petition stated that there were no minor children of the marriage and that the parties had agreed, through counsel, to a division of their property. *220 The wife, Marta Miranda, simultaneously filed her answer, admitted the allegations of the petition and asked only that her family name be restored.
The same day the trial court held a hearing on the petition, during which it read the marital settlement agreement and initialed each page of the document. It then returned the marital settlement agreement to the parties. The final judgment of dissolution of marriage incorporated the agreement by reference and noted that:
In the interest of privacy for the parties, the Court is not requiring the Marital Settlement Agreement to be filed in the public court file. The Court has placed its mark on each page so that the authenticity of the Agreement, including each page thereof, can be determined in any subsequent proceeding that may be necessary.
The final judgment was recorded on December 23, 2004. The court granted the parties’ ore tenus motion to seal the file.
The dissolution of marriage was reported in the press in January 2005. The stories noted that the terms of the settlement were not disclosed.
On March 15, Palm Beach Newspapers, Inc. (“The Palm Beach Post” or “The Post”), filed a- motion to unseal the court file. This motion was filed in the dissolution of marriage case file. The former husband and former wife informed the court that they had no objection, and the court file was unsealed on March 18.
When The Post discovered that the marital settlement agreement was not in the court file, it filed a “Motion for Order Requiring Marital Settlement Agreement to be Filed with the Clerk and Recorded in the Official Records.” The Post asked the court to direct the former husband and former wife to file the marital settlement agreement in the public court file.
The trial court conducted a hearing and granted The Post’s ore tenus motion to intervene for purposes of the motion. On the merits, the court expressed doubt about whether it had jurisdiction to order the requested relief. The court then said, “[t]o avoid piecemeal appeals, the Court reaches the merits of the motion without deciding whether it has subject matter jurisdiction!.] ... The Marital Settlement Agreement is not a Court record as defined by the Rules and applicable case law[.]” Accordingly, the trial court denied relief.
The Post filed in this court a petition for review of the trial court’s order. See Fla. R.App. P. 9.100(d). This court denied the petition by unpublished order.
The Post filed a motion for rehearing, rehearing en banc, and certification of a question of great public importance. In the motion The Post requested issuance of a written opinion. The majority has denied the motion on the authority of Davis v. Cincinnati Enquirer, 164 Ohio App.3d 36, 840 N.E.2d 1150 (2005).
I believe the motion for rehearing is well taken and we should grant it.
II. The Marital Settlement Agreement is a Public Record
When The Post’s petition for review was originally submitted to our panel, I voted to deny it because I agreed with the trial judge’s conclusion that the marital settlement agreement was not a public record. It seemed to me that so long as the agreement had not been filed by the parties in the court file, it followed that the agreement was not a public document. See Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378 (Fla.1987). On revisiting the issue in light of the motion for rehearing, however, I am now convinced that my earlier conclusion was in error.
Controlling here is the plain language of Florida’s constitutional right of access to public records. Under Article I, Section 24, a public record is one which is “made or received in connection with the official *221 business of any public ... officer ... of the state,” unless the record has been exempted from public disclosure by statute or another constitutional provision. Id. (emphasis added); Ait. I, § 24(a), Fla. Const. This constitutional provision specifically applies to the judicial branch, id., and is self-executing. Id. at Art. I, § 24(e).[1] Turning now to the facts of this case, there was a hearing in the trial court on the petition for dissolution of marriage. At that time, the parties handed the trial judge the marital settlement agreement. The judge reviewed it and “received testimony that the Marital Settlement Agreement was negotiated between the parties, through counsel, and was entered into freely, voluntarily and without duress.” The court placed a mark on each page and returned the document to the parties.
The conclusion is inescapable that the marital settlement agreement is a judicial record. The trial judge received it, reviewed it, initialed it, and made findings about it in the hearing on the petition for dissolution of marriage. The agreement was received by the judge in connection with the official business of the court, and is therefore a judicial record. See id. Art. I, § 24(a), Fla. Const.; see also Media Gen. Convergence, Inc. v. Chief Judge, 840 So.2d 1008, 1016 (Fla.2003) (documents received by chief judge in connection with court business are judicial records subject to public disclosure unless there is an applicable exemption from disclosure); cf. State v. City of Clearwater, 863 So.2d 149, 155 (Fla.2003) (personal e-mails on government computers are not public records); Smithwick v. Television 12, 730 So.2d 795, 798 (Fla. 1st DCA 1999) (where trial court erroneously allowed discovery documents to be removed from court file, the documents must be returned to the file); Tober v. Sanchez, 417 So.2d 1053, 1054-55 (Fla. 3d DCA 1982) (where records custodian transferred records to county attorney and refused to comply with public records request, the records must be returned to the custodian and produced).
The former husband and former wife argue that the true test is whether the parties themselves filed the marital settlement agreement in the court file. They maintain that the decision in Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378 (Fla.1987), is dispositive. While I originally accepted that argument, I am now convinced that Burk is inapplicable here.
In Burk, the press sought to attend pretrial discovery depositions in a criminal case. The press also wished to obtain copies of depositions which had not been transcribed or filed with the court. The press argued that depositions are compelled by judicial process and therefore depositions should be viewed as judicial proceedings. The Florida Supreme Court rejected that argument and held that discovery depositions would become public when filed in the court file. Id. at 384.
The important point for present purposes is the Bwrk court’s reasoning. The &rt court explained that discovery depositions are not “judicial proceedings ‘for the simple reason that there is no judge present and no rulings nor adjudications of any sort are made by any judicial authority.’ ” Id. (emphasis added). In the present case, by contrast, a judge was present and made adjudications. The Burk decision does not apply here.
*222 III. Possible Exemption
As the marital settlement agreement is a judicial record, the next question is whether it is exempt from disclosure. See Art. I, § 24(a), Fla. Const.; Media Gen. Convergence, 840 So.2d at 1016-20.
The trial court did not reach the question of a possible exemption from public disclosure because the trial court had concluded that the unfiled marital settlement agreement was not a judicial record. The correct procedure, therefore, is to remand and allow the former husband and former wife the opportunity to argue that the marital settlement agreement should be exempt from public disclosure under Barron v. Fla. Freedom Newspapers, Inc., 531 So.2d 113, 118 (Fla.1988) (listing criteria for closure of court proceedings or records), and Florida Rule of Judicial Administration 2.420(c)(9).
IV. Jurisdiction
The former husband and former wife argued below, and here, that the trial court did not have jurisdiction to consider The Post’s motion to require the parties to file the marital settlement agreement. They point out the judgment contains a paragraph directing that the marital settlement agreement would not be filed in the public record. When The Post filed its motion, it was three months after the entry of judgment dissolving the marriage. By then the appeal time had expired and the judgment had become final. The only reservation of jurisdiction was for enforcement of the marital settlement agreement.
The former husband and former wife maintain that the trial court had no jurisdiction to disturb the final judgment. They argue that The Post demonstrated no ground for relief from judgment under Family Law Rule 12.540. In my view, these jurisdictional arguments are without merit.
We deal here with the Florida constitutional right of public access to public records. Not only does the constitution guarantee public access, but the constitutional provision is self-executing. Art. I, § 24(c), Fla. Const. A self-executing constitutional provision is one which requires “no legislative action to put its terms into operation .... ” 10 Fla. Jur.2d Constitutional Laiv § 57, at 516 (2003) (footnote omitted). That means the courts may enforce the right by any appropriate procedure.
There is ample precedent for the proposition that the trial court has jurisdiction to entertain a motion for public access to judicial records even if the case is closed. In Friend v. Friend, 866 So.2d 116, 117 (Fla. 3d DCA 2004), this court allowed exactly the same procedure that The Post is requesting in the present case. In Friend, this court affirmed a trial court order which allowed a nonparty to intervene for the limited purpose of unsealing the court file in a dissolution action which had concluded five years previously. Id. at 117. This court said, “The denial of access to dissolution of marriage proceedings may not be based solely on the wishes of parties to the litigation.” Id. Stated differently, the parties cannot bargain away the public’s right of access to public records. The Friend court granted relief even though the file had been closed for five years.
There is a “growing consensus among the [federal] courts of appeals that intervention to challenge confidentiality orders may take place long after a case has terminated.” Pansy v. Borough of Stroudsburg, 23 F.3d 772, 779 (3d Cir.1994) (citation omitted). In Pansy, a civil rights action was dismissed with prejudice pursuant to a settlement agreement, but the settlement agreement was not filed with the trial court. The trial court entered a confidentiality order. Six months later, several newspapers filed a motion to intervene in the case which had been dismissed, seeking to compel the production of the unfiled *223 settlement agreement, or to vacate the confidentiality order. The trial court denied the motion because the case had been concluded for six months. Id. at 777-78.
The Third Circuit reversed, holding that the trial court can consider such a request notwithstanding that the request was made long after the case had been terminated. Id. at 779. The court noted that a request for access to judicial records does not disturb the interest of the litigants in the finality of the underlying judgment, because the requesting party “sought to litigate only the issue of the protective order, and not to reopen the merits.... ” Id. at 780 (citation and internal quotation marks omitted).
The Third Circuit noted that:
in cases dealing with access to information, the public and third parties may often have no way of knowing at the time a confidentiality order is granted what relevance the settling case has to their interests. Therefore, to preclude third parties from challenging a confidentiality order once a case has been settled would often make it impossible for third parties to have them day in court to contest the scope or need for confidentiality.

Id.

More recent decisions of other courts have acknowledged the growing consensus that intervention to challenge confidentiality orders may take place long after a case has terminated. See Equal Employment Opportunity Comm’n v. Nat’l Children’s Ctr., Inc., 146 F.3d 1042, 1047 (D.C.Cir.1998) (citing growing consensus; granting relief after delay of two years); In re Linerboard Antitrust Litig., 333 F.Supp.2d 333, 339 (E.D.Pa.2004) (citing growing consensus; granting relief after delay of six months); Rosado v. Bridgeport Roman Catholic Diocesan Corp., 276 Conn. 168, 884 A.2d 981, 1015 (2005) (citing growing consensus; granting relief after delay of one year).
Early in this litigation, the former husband and former wife de facto acknowledged that the trial court had jurisdiction. As already explained, the judgment and sealing order were entered at the end of December 2004. It was not until March 2005 that The Post filed its motion to unseal the file-which it filed in the court file in the matrimonial action. The former husband and former wife consented to the entry of the unsealing order. If the trial court loses all jurisdiction upon the judgment becoming final, then logically this case file never could have been unsealed. But in reality the court did have jurisdiction to unseal the file.
The majority has denied relief on authority of Davis v. Cincinnati Enquirer, 164 Ohio App.3d 36, 840 N.E.2d 1150 (2005). Respectfully, that case hinges on Ohio’s statutory limitations on the jurisdiction of the domestic relations court and Ohio rules that do not allow for intervention in divorce cases. Id. at 1154. The Ohio Court of Appeals concluded that there was no Ohio procedural vehicle by which the Cincinnati Enquirer could make a request for public records within the underlying divorce case. The court ruled that the newspaper would have to file a separate mandamus action.
Florida does not suffer thq procedural limitations described by the Ohio court. Florida and federal courts entertain such requests notwithstanding that the case file is closed. And, since Article I, Section 24, is self-executing, the courts have both the power and the duty to entertain such requests.[2]
V. Relief from Judgment
The procedure followed by The Post in this case can also be viewed as a proper *224 motion for relief from judgment under Florida Family Law Rule 12.540 and Florida Rule of Civil Procedure 1.540(b)(4).
The former husband and former wife were parties to, and are bound by, the final judgment. The Post was not a party, and had no notice or opportunity to be heard regarding that part of the judgment which returned the marital settlement agreement to the parties.
As to The Post, the portion of the judgment which returned the marital settlement agreement to the parties is void. That is so because a judgment entered without notice is void. See Shields v. Flinn, 528 So.2d 967, 968 (Fla. 3d DCA 1988), and cases cited therein. Relief from a void judgment may be granted at any time. Id.
In this case, The Post’s motion sought relief from that part of the matrimonial judgment stating, “In the interest of privacy for the parties, the Court is not requiring the Marital Settlement Agreement to be filed in the public court file.” This is a proper subject for a motion under Florida Family Law Rule 12.540 and Rule of Civil Procedure 1.540(b)(4).
In sum, The Post’s motion and request for intervention were proper under Article I, Section 24, and the court’s inherent powers as explained in Section IV of this opinion. The motion and request for intervention were also proper under Florida Family Law Rule 12.540 and FI. R. Civil Procedure 1.540(b)(4), as explained in this Section of the opinion.
VI. Conclusion
While sympathetic to the desire of the former husband and former wife for financial privacy, I am convinced that the foregoing analysis is compelled by Article I, Section 24, of the Florida Constitution.
The Post followed the correct procedure in filing both of its requests — the motion to unseal the file (which was granted) and its request for access to judicial records (which was denied) — in the dissolution of marriage ease. The trial court had jurisdiction to consider both motions.
On the merits, the marital settlement agreement is a judicial record and must be disclosed unless there is an applicable exemption. We should remand with leave for the former husband and former wife to make such arguments as they may have that the file should be sealed under Barron, 531 So.2d at 118, and Florida Rule of Judicial Administration 2.420(c)(9).[3]

. Article I, Section 24 was adopted in 1992 and amended in 2002. It states, in part:
(a) Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this Section or specifically made confidential by this Constitution. This Section specifically includes the legislative, executive, and judicial branches of government and each agency or department created thereunder; counties, municipalities, and districts; and each constitutional officer, board, and commission, or entity created pursuant to this Constitution.
[[Image here]]
(c) This Section shall be self-executing.

. Allowing the press or public to proceed by motion in the ori¿inal case is much more *224 expeditious than requiring the filing of a new action.

. I would also grant the motion for certification of a question of great public importance, and the motion for issuance of a written opinion.