988 So.2d 1163 (2008)
CORDIS CORPORATION and Johnson & Johnson of New Jersey, Inc. d/b/a Johnson & Johnson, Petitioners,
v.
Sean O'SHEA, Respondent.
No. 4D07-4701.
District Court of Appeal of Florida, Fourth District.
August 6, 2008.
*1164 Jeffrey B. Shapiro, Neville M. Leslie, and Andrea Cox of Arnstein & Lehr LLP, Miami, for petitioners.
Jane Kreusler-Walsh of Kreusler-Walsh, Compiani & Vargas, P.A., and Theodore Babbitt and Joseph R. Johnson of Babbitt, Johnson, Osborne & LeClainche, P.A., West Palm Beach, for respondent.
PER CURIAM.
Petitioners Cordis Corporation (Cordis) and Johnson & Johnson of New Jersey, Inc. seek certiorari review of a trial court order which denied their motion to prohibit respondent Sean O'Shea (O'Shea) from disclosing certain discovery to attorneys who are not counsel of record in the underlying case, or even counsel in collateral litigation involving petitioners. This petition presents an issue of first impression. Florida courts have not yet addressed the propriety of a "sharing provision" as broad as this. We grant the petition and quash this order for reasons which follow.
In December, 2006, respondent O'Shea filed a medical products liability lawsuit against petitioners Cordis and Johnson & Johnson, alleging that he experienced injuries due to a defective CYPHER drugeluting stent implanted in him. That stent was manufactured, marketed, distributed and sold by Cordis. Cordis and Johnson & Johnson answered the complaint and denied the allegations of negligence, strict liability, failure to warn, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular use, intentional misrepresentation, and negligent misrepresentation.
O'Shea then served Cordis[1] with three requests for production making 145 separate requests for documents. O'Shea requested contracts to manufacture the stent, to market it, documents relating to its testing, the education and training of the sales force for it, documents relating to sales projections and forecasts on it, and documents relating to any adverse event report in and outside of this country. Cordis timely served written responses and objections to some portions of the requests. It agreed to produce certain documents upon entry of a protective order on trade secrets and confidentiality. Plaintiff's counsel sought an order containing a "sharing provision" which would permit him to disclose the confidential information to other attorneys.
O'Shea moved to overrule Cordis' objections and moved to compel production. Cordis offered to produce the disputed documents for in camera inspection. O'Shea's attorney, Theodore Babbitt said that in camera inspection would not be *1165 necessary because he agreed that the documents would remain confidential unless and until he challenged such a designation. He advised that at least 20 other law firms had contacted him with an interest in viewing the confidential documents. He argued that the courts would be congested with unnecessary litigation if the requesting attorneys were required to first file suit before they could obtain the confidential documents. Cordis argued in response that the documents involved confidential, proprietary and trade secret information, and that broad sharing provisions would endanger its ability to protect confidential and proprietary information.
The trial court entered a "Stipulated Protective Order"[2] governing production of the Cordis confidential documents. The order provided procedures before disclosure of the confidential documents could be made to counsel for another plaintiff including prior notice to petitioners. It limited dissemination of confidential information to plaintiff and defendants, their attorneys of record, employees of their attorneys of record who are essential to the prosecution or defense, consultants and experts retained by counsel, authors, senders, addressees and copy recipients of the confidential information. It further provided that all attorneys requesting access to confidential information under that stipulation shall first sign an attached agreement and agree to be bound by its restrictions. This order contained no express provisions for sharing confidential information extended to counsel not involved in collateral litigation involving the CYPHER stent.
Cordis produced thousands of pages of documents. A few weeks later, Attorney Babbitt advised Cordis of his intent to disclose documents to other attorneys in Florida and in other states. Petitioners claim these attorneys are not currently involved in litigation regarding the CYPHER stent. The parties could not agree on this disclosure, and Cordis filed a motion to prohibit disclosure of confidential information. O'Shea filed a motion for clarification of the stipulated protective order and to overrule Cordis' objections regarding disclosure of confidential information. The trial court heard argument and entered the order now before this Court, denying Cordis' motion to prohibit, and allowing Attorney Babbitt to disclose Cordis' confidential documents to attorneys regardless of their involvement in collateral litigation regarding the CYPHER stent.
Certiorari lies to review a trial court order which compels production of trade secrets or other confidential or proprietary information. See e.g. Citigroup, Inc. v. Holtsberg, 920 So.2d 25 (Fla. 4th DCA 2005); Gazerro v. Crane, 890 So.2d 446 (Fla. 4th DCA 2004). The petitioner challenging such an order has the burden to show that the trial court departed "from the essential requirements of law causing material harm for which there is no adequate remedy on final appeal." Katz v. N.M.E. Hosps., Inc., 842 So.2d 853, 854 (Fla. 4th DCA 2002). It is well settled that the scope and limitation of discovery falls within the broad discretion of the trial court. Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So.2d 189 (Fla.2003).
Before applying these standards, we address O'Shea's claim that this petition is untimely and that petitioners waived the right to challenge the order denying protective relief because they did not file a certiorari petition within thirty days of *1166 entry of the stipulated protective order. However, petitioners are not challenging the stipulated protective order. That order required all attorneys who seek review of the documents to read the order and execute an agreement to be bound by it, and to submit to the jurisdiction of the circuit court as necessary to enforce its provisions. It did not expressly or implicitly extend to allow widespread sharing of confidential documents with attorneys who are not representing a collateral litigant in a suit involving the stent. Therefore we reject the claims of untimeliness and waiver.
We find that petitioners have demonstrated the potential of irreparable harm based on their argument that the discovery order here will result in dissemination of privileged documents. This type of harm is often called "cat out of the bag." Once the confidential information is released to attorneys not involved in collateral litigation, the harm, or invasion of the privilege, privacy or trade secret interest, has occurred. It cannot be remedied by final appeal. See e.g. D. Stephenson Constr., Inc. v. Mendiguren, 958 So.2d 527 (Fla. 4th DCA 2007). See also Allstate Ins. Co. v. Boecher, 733 So.2d 993 (Fla. 1999).
Cordis is a manufacturer of medical device products in a highly competitive market, and it contends that technological innovation and resulting products are the core of its business. It has argued that if the discovery information is widely disseminated, beyond that of counsel in pending collateral litigation involving the same stent, it will be irreparably harmed. This is the irreparable harm it seeks to prevent by this petition, not the mere fact that its counsel would have to travel to other jurisdictions to try to enforce the stipulated discovery order.
Petitioners argue that the order denying protective relief, allowing respondent/plaintiff's counsel to disclose confidential documents to counsel who are not in this action and/or do not represent a litigant in collateral litigation involving the CYPHER stent, constitutes a departure from the essential requirements of law. Alterra Healthcare Corp. v. Shelley, 827 So.2d 936 (Fla.2002). They assert proprietary and privacy interests in protecting against the broad dissemination of clinical studies, adverse event reports and analysis, regulatory submissions, sales training materials, patent information, data backup procedures and other matters. Petitioners argue that the order allows disclosure of confidential information to attorneys who do not have a legitimate interest in obtaining it. They cite Higgs v. Kampgrounds of America, 526 So.2d 980 (Fla. 3d DCA 1988) for its statement that in issues involving discovery of confidential information, courts "decide the questions by balancing the competing interests to be served by granting or denying the discovery." Id. at 981. A party seeking confidential information must show a need for that information which outweighs the opposing party's need to keep the information confidential. Id. See also Publix Supermarkets, Inc. v. Johnson, 959 So.2d 1274 (Fla. 4th DCA 2007).
Attorney Babbitt explained to the trial court that other attorneys sought the discovery in order to determine whether they might have grounds to file a lawsuit involving the CYPHER stent in the future. Petitioners argue that the discovery rules do not allow O'Shea to obtain confidential information in this case to then share with whomever he chooses. They point to Aspex Eyewear, Inc. v. Ross, 778 So.2d 481, 482 (Fla. 4th DCA 2001) where this Court allowed discovery of confidential information but added that the circuit court could fashion safeguards "to prevent dissemination of this information to other entities which are not involved in the litigation."
*1167 In Foltz v. State Farm Mutual Automobile Insurance Co., 331 F.3d 1122 (9th Cir.2003), the ninth circuit acknowledged that courts favor access to discovery materials to meet the needs of parties engaged in collateral litigation. However, that was a case in which public interest groups, seeking access to sealed court records and individuals involved in collateral litigation against an insurer, moved to intervene and seek access to discovery materials and court records following settlement of a fraud action against an automobile insurer. The court said that it would not automatically grant a collateral litigant's request for modification of a protective order to allow access to discovery in every case. Instead, the collateral litigant must show relevance of the protected discovery to the collateral proceedings and its discoverability therein. This would prevent collateral litigants from gaining access to discovery information "merely to subvert limitations on discovery in another proceeding." Id. at 1132 (citing Wilk v. Am. Med. Ass'n., 635 F.2d 1295, 1299 (7th Cir.1981)).
Petitioners agree with the type of sharing provision endorsed in Foltz and its progeny, but argue that the order in this case exceeds the scope of permissible discovery contemplated even by that decision by allowing dissemination beyond counsel for the collateral litigant, to attorneys who may simply be considering litigation in the future. Petitioners cite federal court decisions restricting dissemination of comparable discovery to collateral litigants. See, e.g., United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424 (10th Cir.1990), cert. denied sub. nom Am. Special Risk Ins. Co. v. Rohm & Haas Co., 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); Wilk v. Am. Med. Ass'n., 635 F.2d 1295 (7th Cir.1980).
Further, not every federal court decision has approved sharing confidential information even with collateral litigants or counsel. For example, in Williams v. Taser International, Inc., 2006 WL 1835437 (N.D.Ga. June 30, 2006), the federal district court declined to allow the plaintiffs in a lawsuit against a stun gun manufacturer to retain confidential documents upon the conclusion of the case, or to share confidential information with other attorneys or experts involved in litigation against Taser. The court said that the more widely the confidential documents would be disseminated, the more likely it would be that the documents would be released and more difficult for the court to enforce the terms of its protective order. Id. at *2. See also Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297 (N.D.Ill. 1993). The same could be said for the order as it now stands in this case.
Allowing this degree of sharing of confidential information may provide a mechanism for attorneys in states with narrower discovery laws to evade their state law discovery limitations by obtaining confidential information from Florida attorneys and courts. While other states may preclude admission of that discovery later, the fact remains that counsel would have obtained what he or she could not otherwise obtain by using Florida discovery law. The federal courts have recognized that: "federal discovery may not be used merely to subvert limitations on discovery in another proceeding." Blanchard and Co., Inc. v. Barrick Gold Corp., 2004 WL 737485 (E.D.La. Apr. 5, 2004), citing Campbell v. Eastland, 307 F.2d 478 (5th Cir.1962), cert. denied, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). Further, even though counsel receiving the shared confidential information would have to sign an agreement to abide by the provisions of the Florida court order, investigation of discovery disputes and enforcement efforts in other states would pose an unlimited strain on already limited Florida judicial *1168 resources. In this case, allowing this discovery could make the presiding trial judge a lightning rod for enforcement disputes with parties from all over the country.
Petitioners argue that the public, and attorneys not involved in collateral litigation but who may be considering it in the future, do not have a right to access confidential information provided in discovery. "Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement of litigated disputes." Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378 (Fla.), cert. denied, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). Palm Beach Newspapers noted that the non-party press does not have a right of access to pretrial discovery in a criminal case.
Respondent has not invoked application of the Sunshine in Litigation Act, section 69.081, Florida Statutes, which expressly acknowledges that it does not apply to trade secrets, proprietary confidential business information and other information confidential under state or federal law, § 69.081(5), (8), Fla. Stat., and we will not extend our consideration to that issue as is not properly before us.
We reject the respondent's argument that he has a First Amendment right to disseminate discovery to any and all attorneys who request it. There is no First Amendment right of access to pretrial discovery of confidential information. See SCI Funeral Servs. of Fla., Inc. v. Light, 811 So.2d 796 (Fla. 4th DCA 2002) citing Fla. Freedom Newspapers, Inc. v. McCrary, 520 So.2d 32, 35 (Fla.1988); Miami Herald Publ'g. Co. v. Gridley, 510 So.2d 884, 885 (Fla.1987) (extending the rule to pretrial discovery in civil proceedings); Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378, 382 (Fla.1987).
This is not a case in which the media is demanding access to information on the grounds of public interest in disclosure. Neither is this a case in which the plaintiff's lawyer is seeking to disseminate discovery information in order to facilitate preparation of other pending cases involving the same company and stent, such that an argument could be made that dissemination would facilitate case preparation and avoid wasteful duplication of discovery, as discussed in Foltz v. State Farm Mutual Automobile Insurance Co., 331 F.3d 1122 (9th Cir.2003).
Respondent O'Shea has failed to present grounds for widespread sharing of discovery which would place the balance of factors in his favor. He has failed to show a need to broadly share the confidential information with counsel not of record and not engaged in collateral litigation. Indeed, as petitioners point out, counsel requesting the confidential information have not intervened in this case to present any argument to the trial court which justifies the alleged need to obtain the discovery sought. All that respondent has offered is speculation and opinion on why counsel may be interested in the discovery for possible future use. It is for all of these reasons that we grant the petition for writ of certiorari and quash the trial court order allowing Attorney Babbitt to disclose petitioners' confidential information to attorneys who are neither counsel of record in the underlying action nor counsel in collateral litigation involving the CYPHER stent.
Petition granted. Order quashed.
POLEN and DAMOORGIAN, JJ., concur.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
I confess I do not get this institutional aversion to sharing discovery information. *1169 And in this case that aversion is striking indeed. In fact it is so powerful that the Court dismisses out of handand with barely disguised insoucianceformidably preclusive barriers to its decision:
1. We have no transcript of any of the hearings about the evidence and argument on the issue decided. Yet this Court quashes the trial court's order. It is not possible for me to list the many cases in my 17 years in which this Court has refused to consider whether, without a transcript, a trial judge erred, abused discretion or departed from the essential requirements of law. So considerable is this obstacle of having no transcript that in the few cases where we have done so, we have carefully explained why. Without knowing exactly what evidence was presented and what arguments were made, how are we able to say for the right reason that the trial judge was wrong? We simply cannot. Today's opinion does not even mention the lack of a transcript, let alone explain why its absence has been forgiven.
2. Because any sharing recipient would be required to agree to be bound by the applicable protective order and sign the same agreement plaintiff was required to sign, the trial court held that Cordis would not be harmed. The majority rejects this holding based on little more than its own intuition. The opinion does not explain how Cordis is harmed, instead merely invoking the hoary "cat-out-of-the-bag" metaphor without further elucidation. But how does the majority explain the trial court's finding that Cordis had long since freed the fearsome feline? What harm? How irreparable? No explanation.
3. In requesting a protective order, Cordis agreed that plaintiff could share discovery with other attorneys who had already filed similar claims against Cordis. Hence, the question is not whether plaintiff could share discovery outside this lawsuit because Cordis has already agreed he can. Sharing with those considering suit against Cordis is a very modest extension and obviously benefits the legal system. How does it become irreparably harmful? Only by ipse dixit does the majority say so.
Frankly, I also struggle to appreciate how Cordis has any reasonable expectation of privacy in these materials.[3] Cordis placed its product in the public marketplace of its own free will. Is Cordis arguing that when the product it sold in the public marketplace proves defective, causing injury to consumers, Cordis is privileged to hide information about the product and its defect, as well as its own prior knowledge, merely by labeling the information "confidential"? Does the law's solicitude for the trade secrets of commercial entities who voluntarily derive profits in the public marketplace extend to protecting merely "confidential" information about the harms caused by the products? If so, why? If no trade secret is shown, what makes the information "confidential" for discovery purposes? We have no record of an answer to these questions.
The unprecedented, extraordinary holding of our Court today seems founded on speculation or individual judicial preferences. I dissent from it.
NOTES
[1] Johnson & Johnson is the holding company and petitioner claims the documents are sought only from Cordis.
[2] Petitioners claim that the order was a misnomer because the parties did not actually stipulate to it, but rather they had stipulated to a confidentiality agreement without agreeing on the terms of any sharing provision.
[3] Yes, I know this is a locution from criminal law, most often used in issues of search and seizure. But surely the underlying notion is apt. This is civil search and seizure, which is called "discovery". True "trade secrets" demonstrably not being established, why would the law protect "confidential" commercial information it may be unreasonable to protect?