[No. 83645-1. En Banc.]
Argued November 9, 2010. Decided July 14, 2011.

TACOMA NEWS, INC., *Petitioner*, v. THE HONORABLE JAMES D. CAYCE, *Respondent*.

60

*William E. Holt* and *James W. Beck* (of *Gordon Thomas Honeywell LLP*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney for King County*, and *Thomas W. Kuffel* and *Oma L. La Mothe, Deputies*, for respondent.

¶1 MADSEN, C.J. — A reporter from The News Tribune (News Tribune) newspaper sought access to the deposition of a material witness in a criminal trial. The deposition took place in a courtroom with the judge present. Without engaging in an inquiry into factors set forth in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982), the trial court closed the courtroom on the ground that depositions are not open to the public. The deposition was not introduced at trial and did not become part of the court's decision making process.

¶2 The News Tribune seeks a writ of mandamus compelling production of the transcript and videotape of the

deposition, arguing that it had the right to attend the deposition under article I, section 10 of the Washington State Constitution and the First Amendment to the United States Constitution, unless the court determined that closure was appropriate under the *Ishikawa* factors.

¶3 Under the circumstances of this case, we conclude that neither article I, section 10 nor the First Amendment was violated by the trial court's ruling that the deposition proceeding was not open to the public.

## FACTS

¶4 On February 27, 2009, the State charged Michael Hecht, a then-sitting Pierce County Superior Court judge, with felony harassment and patronizing a prostitute. Pursuant to RCW 43.10.232, the Pierce County Prosecuting Attorney's Office asked the State to conduct the prosecution. Judge James Cayce, a visiting judge from King County Superior Court, presided over the proceedings. Trial was scheduled for June 8, 2009, and then continued to September 8, 2009.

¶5 The State alleged that Mr. Hecht paid Joseph Pfeiffer for sex. Mr. Pfeiffer also allegedly witnessed the threat underlying the felony harassment charge. Pfeiffer was therefore a key prosecution witness. On August 25, 2009, after the State made several unsuccessful attempts to locate Pfeiffer and serve him with a subpoena, the State moved for a material witness warrant for Pfeiffer's arrest. The court granted the motion, but the State's efforts to locate Pfeiffer were still unavailing as of the time of trial. The State accordingly moved for another continuance. The court granted the continuance and trial was continued to October 12, 2009. On September 15, 2009, police arrested Pfeiffer on the material witness warrant and he was taken to the Pierce County jail. Attorney Robert Quillian was appointed to represent him.

¶6 On September 16, 2009, the court held a bail hearing for Pfeiffer. The State was concerned that if Pfeiffer were

released, he might not stay in contact with the State or appear at trial. The State therefore moved pursuant to CrR 4.6 to preserve Pfeiffer's testimony by deposition. The court granted the motion and the deposition was set for September 21, 2009. Mr. Hecht's defense counsel asked Judge Cayce if he was going to be present at the deposition, saying that he preferred that the judge be present. Partial Verbatim Report of Proceedings (VRP) (Sept. 16, 2009) at 8. Judge Cayce agreed to be available. *Id.* ("All right, I will make myself available.").

¶7 Because Pfeiffer was in custody, the prosecuting attorney made arrangements for the deposition to be held in an empty courtroom. He knew that the jail is connected to most of the courtrooms by secure access routes and believed that using a courtroom would be most convenient for the jail staff. The prosecuting attorney hired a private reporting firm to record the deposition, both in videotaped form and as a written transcript.[1]

¶8 On September 21, 2009, Mr. Pfeiffer's deposition was taken. Before it began, Judge Cayce heard motions, including the State's motion to provide Pfeiffer with transactional immunity.[2] Once the motions were addressed, defense counsel requested that the court close the courtroom during the deposition. Judge Cayce agreed that it would be proper to exclude nonparties (other than Pfeiffer's counsel, Mr. Quillian) because depositions are not open to the public. He said that the parties were "certainly not in trial. [The deposition] may or may not be admissible at trial." VRP (Sept. 21, 2009) at 9. Judge Cayce allowed the doors to remain open, however, and said he would take up the matter of excluding nonparties if any arrived.

---

[1] After being advised by superior court administration that there might not be a court reporter available to record a follow-up bail hearing to be conducted the same day as the deposition, the prosecuting attorney agreed to have the private reporting firm also record the bail hearing to avoid delay.

[2] The hearing on transactional immunity was also recorded by the private court reporter.

¶9 The deposition began a little after 9:30 a.m. At 1:30 p.m., shortly before the deposition concluded, a reporter and an attorney from the News Tribune entered the courtroom. Mr. Hecht's counsel objected to their presence. Judge Cayce explained that a deposition was taking place ("this is just a deposition normally conducted in a law office," (*id.* at 13)), permitted the News Tribune's counsel to argue against excluding nonparties from the proceeding, ruled that the deposition was not open to the public, and directed the reporter and attorney to leave the courtroom. Signs stating that the courtroom was closed were then posted on the courtroom doors. The deposition was completed.

¶10 The court reconvened in open session about 20 minutes later and held a follow-up bail hearing. Pfeiffer was released on personal recognizance.

¶11 On September 23, 2009, the News Tribune filed an action in this court, seeking a writ of mandamus directing Judge Cayce to order production of a copy of the complete proceedings, including transcript and video, and to keep all similar proceedings in the trial open to the public "unless the press and public first receive notice of the hearing and requirements of *Seattle Times v. Ishikawa* are satisfied." Mandamus Action Against State Officer at 3. We denied the News Tribune's motion for an emergency hearing on the petition.

¶12 Mr. Hecht's trial proceeded. On October 19, 2009, Mr. Pfeiffer testified. The transcript and video of his deposition were not introduced or filed in connection with any motions. On October 28, 2009, a jury convicted Hecht on both counts. The court entered judgment and sentence.

## DISCUSSION

### Mootness

¶13 Initially, we decline to dismiss this action on the ground of mootness due to completion of Mr. Hecht's trial.

We may decide an issue in a technically moot case when the issue is of continuing and substantial interest. *E.g.*, *In re Marriage of Horner*, 151 Wn.2d 884, 891-92, 93 P.3d 124 (2004). In particular, the court has addressed issues of access to the courts after criminal trials have been completed on the ground that although the opinion would have no effect on the particular proceeding, the question was one likely to arise again and continue to evade review. *Federated Publ'ns, Inc. v. Swedberg*, 96 Wn.2d 13, 16, 633 P.2d 74 (1981) (right of the public to attend proceedings under article I, section 10 at issue; as an alternative to closure of pretrial proceedings and in order to protect the defendant's rights to a fair trial, the trial court required the media to agree to abide by *Bench-Bar-Press Committee of Washington Statement of Principles*, thus effecting a partial closure to news representatives who declined to agree; court addressed the posttrial challenge to the partial closure despite mootness and upheld the trial court); *Federated Publ'ns, Inc. v. Kurtz*, 94 Wn.2d 51, 615 P.2d 440 (1980) (closure of suppression hearing; court decided the case because it presented a question of a public nature likely to recur and a court decision was desirable for the guidance of public officials). We conclude that this course is appropriate here, notwithstanding the fact that the trial for which Mr. Pfeiffer's deposition was prepared has already occurred.

## Standard of Review

¶14 The News Tribune brought this mandamus action under the holding in *Ishikawa* that "[m]andamus by an original action in this court is a proper form of action for third party challenges to closure orders in criminal proceedings." *Ishikawa*, 97 Wn.2d at 35.[3] A writ of mandamus is

---

[3] For this principle, *Ishikawa* relied on *State v. Bianchi*, 92 Wn.2d 91, 92, 593 P.2d 1330 (1979) (involving actions challenging orders to seal court records). In federal courts, limited intervention is a common vehicle for purposes of a challenge based on the right to access judicial proceedings. *E.g.*, *In re Associated Press*, 162 F.3d 503, 507-09 (7th Cir. 1998) (limited intervention in criminal proceedings is

available to "compel a state officer to undertake a clear duty." *Gerberding v. Munro*, 134 Wn.2d 188, 195, 949 P.2d 1366 (1998). The writ " 'must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law.' " *Wash. State Farm Bureau Fed'n v. Reed*, 154 Wn.2d 668, 672, 115 P.3d 301 (2005) (quoting RCW 7.16.170). Because the duty to act must be imposed by law, the News Tribune's burden is to show that Judge Cayce was required by law to perform a specific act. *See Cedar County Comm. v. Munro*, 134 Wn.2d 377, 380, 950 P.2d 446 (1998). The question whether there is a clear legal duty that a state officer has violated is a question of law reviewed de novo. *Delaney v. Spokane County Bd. of Comm'rs*, 161 Wn.2d 249, 253, 164 P.3d 1290 (2007).

██ ¶15 The News Tribune contends that Judge Cayce violated the legal duty to comply with constitutional provisions establishing the public's right to access court proceedings. The first question is thus whether, under article I, section 10 of the Washington State Constitution or the First Amendment to the United States Constitution, a CrR 4.6 deposition must be open to the press and the public if it is held in a courtroom with the judge present. Article I, section 10 states that "[j]ustice in all cases shall be administered openly." The public and the press are thereby guaranteed "a right of access to judicial proceedings and court documents in both civil and criminal cases." *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004) (citing *Cohen v. Everett City Council*, 85 Wn.2d 385, 388, 535 P.2d 801 (1975)). The First Amendment also preserves a right of access to court proceedings and records. Openness enhances the basic fairness of a criminal trial and the appearance of fairness

"the most appropriate procedural mechanism" for raising right of access challenges); *United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) (same). We have recently held that limited intervention is an appropriate method to use to challenge trial court orders sealing records in criminal matters, given adoption of GR 15 after *Bianchi* was decided. *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 246 P.3d 768 (2011). We note that whatever impact that holding may prove to have in future cases involving constitutional questions of access to the courts, the present case was brought in accord with the then-prevailing rule in *Ishikawa*.

essential to public confidence. *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) (*Press-Enter.* I).

## Article I, section 10

¶16 Article I, section 10 "guarantees the public and the press a right of access to judicial proceedings and court documents in both civil and criminal cases." *Dreiling*, 151 Wn.2d at 908. Our cases have repeatedly emphasized the "utmost public importance" of open courts and have repeatedly decried "[p]roceedings cloaked in secrecy." *Id.* at 903, 908.

¶17 While openness is presumed, it is not absolute. *Id.* at 909. Under *Ishikawa*, the public's right of access may be restricted, but only if the proponent of closure persuades the court that closure is appropriate after considering five factors.[4] In addition, not every occurrence or event related

---

[4] As set out in a footnote in *Rufer v. Abbott Labratories*, 154 Wn.2d 530, 543 n.7, 114 P.3d 1182 (2005) (alterations in original) (quoting *Dreiling*, 151 Wn.2d at 913-15), this analysis is as follows:

"1. *The proponent of closure and/or sealing must make some showing of the need therefor.* [*Federated Publ'ns v.* ]*Kurtz*, [94 Wn.2d 51, ]at 62, [615 P.2d 440 (1980)]. In demonstrating that need, the movant should state the interests or rights which give rise to that need as specifically as possible without endangering those interests.

". . . .

". . . Because courts are presumptively open, the burden of justification should rest on the parties seeking to infringe the public's right. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558-59, 569-70, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976). From a practical standpoint, the proponents will often be in the best position to inform the court of the facts which give rise to the alleged need for closure or sealing. . . .

"2. '*Anyone present when the closure [and/or sealing] motion is made must be given an opportunity to object to the [suggested restriction]'*. *Kurtz*, [94 Wn.2d] at 62.

"For this opportunity to have meaning, the proponent must have stated the grounds for the motion with reasonable specificity, consistent with the protection of the right sought to be protected. At a minimum, potential objectors should have sufficient information to be able to appreciate the damages which would result from free access to the proceeding and/or records. This knowledge would enable the potential objector to better evaluate whether or not to object and on what grounds to base its opposition.

"3. *The court, the proponents and the objectors should carefully analyze whether the requested method for curtailing access would be both the least*

to court proceedings falls within the access to the courts provision. For example, we have distinguished "mere discovery" from documents obtained through discovery that are filed with a court in anticipation of a court decision. "[T]he public must—absent any overriding interest—be afforded the ability to witness the complete judicial proceeding, including all records the court has considered in making *any* ruling, whether 'dispositive' or not." *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 549, 114 P.3d 1182 (2005). This principle emerges from the constitutional mandate in article I, section 10 and its purpose to ensure that the "public's trust and confidence in our *entire judicial system* may be strengthened and maintained." *Id.*

¶18 However, while discovery documents filed in court in connection with motions are presumptively open to the public, we have also determined that " '[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.' As this information does not become part of the court's decision making process, article I, section 10 does not speak to its disclosure." *Dreiling*, 151 Wn.2d at 909-10 (citation omitted) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984)). "[A]rticle I, section 10 is not relevant to documents that do not become part of the court's decision making process." *Rufer*, 154 Wn.2d at 548; *see also id.* at 541 (noting

restrictive means available and effective in protecting the interests threatened. See Kurtz, [94 Wn.2d] at 63-64. If limitations on access are requested to protect the defendant's right to a fair trial, the objectors carry the burden of suggesting effective alternatives. If the endangered interests do not include the defendant's Sixth Amendment rights, that burden rests with the proponents.

"4. *'The court must weigh the competing interests of the [parties] and the public'*, Kurtz, [94 Wn.2d] at 64, and consider the alternative methods suggested. Its consideration of these issues should be articulated in its findings and conclusions, which should be as specific as possible rather than conclusory. See People v. Jones, 47 N.Y.2d 409, 415, 391 N.E.2d 1335, 418 N.Y.S.2d 359 (1979).

"5. *'The order must be no broader in its application or duration than necessary to serve its purpose . . .'* Kurtz, [94 Wn.2d] at 64. If the order involves sealing of records, it shall apply for a specific time period with a burden on the proponent to come before the court at a time specified to justify continued sealing."

the absence of any "*public* right of access with respect to" "information surfacing during pretrial discovery that does not otherwise come before the court" (citing *Dreiling*, 151 Wn.2d at 909-10)).

¶19 The News Tribune does not disagree with the general principles stated in *Dreiling* and *Rufer*. It maintains, however, that this case does not really involve a deposition but instead involves a hearing that should have been open to the public unless closure was proper after applying the *Ishikawa* analysis. The News Tribune contends that this was a hearing rather than merely discovery because (1) Pfeiffer's testimony took place in a court, not a private office and (2) "Judge Cayce presided over the examination, ruled on objections, and both parties questioned the witness." Pet'r Tacoma News Inc.'s Opening Br. at 17.

¶20 We disagree. In relevant part, CrR 4.6(a) provides that a court may order that a prospective witness's testimony be taken by deposition upon a showing that the witness "may be unable to attend or prevented from attending a trial . . . and that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice." The "deposition shall be taken in the manner provided in civil actions." CrR 4.6(c). Depositions taken under the rule may be used for contradicting or impeaching the deponent as a witness, or as substantive evidence as "permitted by the Rules of Evidence." CrR 4.6(d). Any objections to admissibility as evidence may be made as provided in civil actions. CrR 4.6(e).

¶21 Contrary to the News Tribune's contentions, the facts that the deposition occurred in a courtroom with a judge present who ruled on objections to testimony did not turn this deposition into a judicial hearing that had to be open to the public and the press. Under CrR 4.6(b), the party asking for the deposition must arrange for the deposition, including the location, and provide notice to every other party of the time and place for taking the deposition. The prosecuting attorney arranged for the deposition to be

held in an empty courtroom for the convenience of the jail staff responsible for transporting Pfeiffer, who was being detained. The deposition could have been, as Judge Cayce pointed out, held in a law office. Whether in a courtroom or in a law office, the proceeding is the same. Whether a deposition is a deposition does not depend upon where it takes place. Rather, it depends upon the nature and effect of the proceeding. Here, the prosecutor sought to preserve Pfeiffer's testimony in accord with the rule.

¶22 Just as we would not consider a proceeding normally conducted in a courtroom and subject to the open courts provision to be free of the requirements of article I, section 10 merely because it was held in a different location, we do not conclude that use of a courtroom controls the issue of application of the constitutional provision in the case of a deposition taken in an empty courtroom for convenience of staff. The place, in and of itself, does not dictate whether the right of access under article I, section 10 exists.

¶23 Nor do we find that the presence of Judge Cayce requires a different conclusion. CrR 4.6(e) provides, as noted, that "[o]bjections to receiving in evidence a deposition or part thereof may be made as provided in civil actions." Under CR 30(c), a judge may be asked to make rulings on objections made during depositions. Judge Cayce's presence was, no doubt, unusual in a deposition proceeding, but he agreed to be physically present as a result of the request by Mr. Hecht's counsel. He certainly did not arrange for a "hearing" to make any rulings in Mr. Hecht's criminal proceedings. Because rulings on objections made during a deposition are within the contemplation of CrR 4.6(c) and CR 30(c), the fact that Judge Cayce made such rulings in person did not turn the deposition into a hearing to which article I, section 10 applies.

¶24 As explained, our cases establish that mere discovery is not subject to article I, section 10 unless the information or documents obtained through discovery becomes part of the decision making process. A preservation deposition

under CrR 4.6 is not automatically such discovery. Rather, a transcript and videotape of a CrR 4.6 deposition is at issue only when any of the parties seeks to use them according to the requirements of CrR 4.6(d) "for the purpose of contradicting or impeaching the testimony of the deponent as witness, or as substantive evidence under circumstances permitted by the Rules of Evidence." The deposition must be submitted for purposes of the decision making process, either at the trial itself or in connection with a motion.

¶25 Here, Pfeiffer's deposition was never used in connection with Mr. Hecht's trial—neither for substantive content nor for impeachment purposes. It was not submitted in connection with any motion. Moreover, as Judge Cayce correctly stated, no rulings were made regarding admissibility of any part of the deposition at the time the deposition was taken. In short, the deposition was mere discovery—it never became part of the decision making process.

¶26 The News Tribune also maintains that the judge's rulings at the deposition influenced the parties. There is little doubt that when rulings are made on objections made during a deposition, those rulings will influence litigation or criminal prosecution. But this is always the case when a judge rules on an objection made during a deposition, whether that ruling is made at the time of the objection or later.

¶27 The News Tribune also contends that the deposition "may have been the only time the public could view Pfeiffer's testimony, whether live or otherwise." Pet'r Tacoma News Inc.'s Opening Br. at 18. The News Tribune points out that the videotape that was made at the deposition would not have been shown if the case had been resolved through a plea, as often happens. In that event, "the public and press would not know what occurred between the Court, the witness, and the parties, and whether the examination and Court rulings lead to the resolution short of trial." *Id.*

¶28 Generally speaking, whenever pretrial discovery, including a deposition, leads in whole or in part to settlement in a civil case or to a plea agreement in a criminal case, the matter may be resolved without a trial. In the civil context, this does not mean that the right of access to the courts requires that the deposition testimony become public, nor does the potential for settlement mean that the public and press must be allowed to attend depositions so they can know what occurred. Simply put, unless the depositions become part of the judicial decision making process, as we have recognized, article I, section 10 has no application. When parties agree to forgo a trial, it is the parties making the decision. The same is true of negotiations leading to a plea agreement following a CrR 4.6 deposition. If a witness's deposition is not considered by the court in deciding whether to accept a plea agreement, it does not implicate the public's right of access. On the other hand, a court's approval of a settlement or acceptance of a plea agreement is part of the court's decision making process, and a different question may be presented where a settlement is approved or a plea agreement is accepted.

¶29 Moreover, the News Tribune's argument is heavily dependent upon its claims that Judge Cayce "presided" and made "rulings" and received "evidence." But all that the record suggests is that that he made rulings on objections in person. We believe this is equivalent to CR 30(c)'s allowance of a judge making rulings by telephone. Regardless of how often this actually occurs, it is permitted by the rule, and thus permitted by CrR 4.6.[5]

¶30 In the end, the primary aspect of this deposition that makes it different from other depositions that this court

---

[5] Insofar as the News Tribune's argument is premised on newsworthiness, newsworthiness is not equivalent to the right of access under article I, section 10.

The News Tribune also describes the examination of Pfeiffer as involving "one of the most quintessential elements of our criminal justice system," concerning the right of confrontation. Pet'r Tacoma News Inc.'s Reply Br. at 8. The defendant's right of confrontation is the defendant's right, not the right of the public or the press.

has said are not open to the public is that it was a deposition to preserve testimony. Testimony at trial is certainly subject to article I, section 10. However, what is said in a deposition under CrR 4.6 is only such testimony if it is introduced. If it is never used, it is not testimony in the case or comparable to such testimony. Under CrR 4.6, "[a] deposition may be used in part or whole, at trial or hearing if it is admissible under the rules of evidence and it appears that the witness is dead or unavailable, unable to attend or testify because of sickness or infirmity, or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena." 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3810, at 130-31 (3d ed. 2004). Simply because a preservation deposition is taken does not mean it will be used.

¶31 We conclude that the deposition was mere discovery not subject to article I, section 10.

## The First Amendment

¶32 The public and the press have an " 'implicit First Amendment right' " of access to criminal trials, absent an overriding countervailing interest. *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 7, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (*Press-Enter.* II) (quoting *Waller v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)). This right is not all inclusive, however. Whether the right exists at a particular stage of the proceedings or to a given class of documents generally depends on whether there has been a historic tradition of accessibility ("whether the place and process have historically been open") and whether the traditional public access "plays a significant positive role in the functioning of the particular process," for example, in the way that determinations that public access to criminal trials and the selection of jurors is essential to the proper functioning of the criminal justice system. *Id.* at 8, 10; *cf. In*

*re Reporters Comm. for Freedom of Press*, 249 U.S. App. D.C. 119, 773 F.2d 1325, 1331-32 (1985) (applying the same test in a civil proceeding). If this two-pronged test is met, a presumptive right of access attaches, which is not absolute but " 'may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " *Press Enter.* II, 478 U.S. at 9 (quoting *Press-Enter.* I, 464 U.S. at 510).

¶33 The News Tribune contends that under the first prong of the test, the "place" and the "process" in this case have historically been open to the public, arguing that the "place" is the courtroom and the "process" is one where the judge was present, presided over the proceedings, and made rulings on evidence consisting of the testimony of a witness in the courtroom.

 ¶34 As explained above, however, the only reason the deposition occurred in a courtroom is because the prosecuting attorney selected it for the convenience of the staff and in light of Mr. Pfeiffer's status as a detainee. The fact that the deposition occurred in a courtroom is, in and of itself, an insufficient basis on which to find that the right of access to the courts exists. In any event, the importance of "place" in the First Amendment analysis is that when determining whether there is a right of public access, "place" and "process" are together part of the inquiry into traditional access; the two components of the first prong together illuminate the constitutional inquiry. The "process" here was a deposition proceeding, not a trial or a hearing on a motion or other similar proceeding, and as Judge Cayce points out, there is no indication that criminal depositions have ever been historically open to the public.

¶35 Further, as explained, Judge Cayce was present at the request of counsel, he did not "preside" over a "hearing." There is nothing in this record or any argument directing us to any specific facts indicating that the judge here made any rulings other than rulings on objections as allowed by

CrR 4.6(c) and CR 30(c).[6] And as explained above, whether in a civil or criminal case, whether at the time the objection is made or later, any time a judge rules on an objection during a deposition, the ruling carries over into the trial. Yet in both contexts courts have rejected the view that the public has a right of access to depositions.

¶36 In general, courts have found no traditional right of access to pretrial discovery information or documents that are never introduced into the case. The United States Supreme Court has stated that "pretrial depositions and interrogatories are not public components of a civil trial" and "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times*, 467 U.S. at 33. Numerous courts have reached the same conclusion under the First Amendment, in both civil and criminal cases.[7] *E.g.*, *In re Associated Press*, 162 F.3d 503, 512-13 (7th Cir. 1998) (criminal case; district court properly excluded the public and press from governor's deposition taken in camera (and thus with the judge present) under rule permitting the taking of a potential witness's testimony by deposition); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (criminal case; the press does not enjoy any greater right of access than the public and therefore whether the press has a right of access to discovered materials turns on the public's right of access; "[d]iscovery is neither a public process nor typically a matter of public record" and "[h]istorically, discovery materials were not available to the

---

[6] Contrary to the News Tribune's implication, the prosecuting attorney's declaration does not show anything more. In the cited paragraph, counsel stated that "[t]he parties proceeded to take Joseph Pfeiffer's deposition. Objections were lodged during the deposition and the court made rulings." State's Mem. Re: Mandamus Action Against State Officer, App. A (Decl. of John Hillman at 8, ¶ 22). The declaration shows that the deposition proceeded according to the rules, with the judge ruling on objections made during the deposition.

[7] The press is not guaranteed a right of special access to information that is not available to the public generally; rather, the press has the same right of access that the public has. *Branzburg v. Hayes*, 408 U.S. 665, 684, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972).

public or press"; documents collected during discovery are not " 'judicial records' "); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) (no First Amendment right to discovery; discovery process is not traditionally open to the public); *Times Newspapers, Ltd. (of Gr. Brit.) v. McDonnell Douglas Corp.*, 387 F. Supp. 189, 197 (C.D. Cal. 1974) (depositions "are not a judicial trial, nor a part of a trial, but a proceeding preliminary to a trial, and neither the public nor representatives of the press have a right to be present" when depositions are taken); *Kimberlin v. Quinlan*, 145 F.R.D. 1 (D.D.C. 1992) (no right to attend depositions); *Mokhiber v. Davis*, 537 A.2d 1100, 1109 (D.C. 1988) ("no . . . right of access to pretrial depositions, interrogatories, and documents gained through discovery"); *Amato v. City of Richmond*, 157 F.R.D. 26 (E.D. Va. 1994) (no First Amendment right to be present at deposition); *Palm Beach Newspapers, Inc. v. Burk*, 504 So. 2d 378 (Fla. 1987) (press has no First Amendment right to attend a deposition in a criminal trial or to obtain unfiled depositions); *People v. Pelo*, 384 Ill. App. 3d 776, 780-84, 894 N.E.2d 415, 323 Ill. Dec. 648 (2008) (no public right of access to deposition in criminal case that had not been submitted into evidence or used in open court; deposition taken pursuant to a rule allowing the deposition for preservation of evidence because of a substantial possibility it would be unavailable at the time of trial); *State ex rel. Mitsubishi Heavy Indus. Am., Inc. v. Circuit Court*, 2000 WI 16, 233 Wis. 2d 1, 12-21, 605 N.W.2d 868 (no First Amendment right or right under court rule to unfiled pretrial discovery materials).

¶37 Neither the physical location nor the presence of the judge transformed this procedure into anything other than what it was, a deposition under CrR 4.6. We agree with those courts that have found that a deposition in a criminal case has not traditionally been open to the public.

¶38 The second prong of the First Amendment inquiry requires the court to consider whether public access plays a particularly significant positive role in the actual function-

ing of the process. On the one hand, for example, the Court explained that "there are some kinds of government operations that would be totally frustrated if conducted openly," with the classic example being that the proper functioning of the grand jury system depends upon secrecy of the proceedings. *Press-Enter.* II, 478 U.S. at 9. On the other hand, other proceedings require access, for example, openness in criminal trials, which enhances the basic fairness of these trials and the appearance of fairness that is essential to public confidence in the criminal justice system. *Id.*

¶39 In this connection, Judge Cayce relies in particular on *Palm Beach Newspapers*, 504 So. 2d 378. There, a local newspaper sought to be present at pretrial depositions and to obtain transcripts of the depositions, over the objections of both prosecutor and defendant. The Florida Supreme Court observed that as the Court in *Seattle Times* said, " '[L]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes,' " and a nonparty to suit has no independent constitutional right to access the discovery process. *Palm Beach Newspapers*, 504 So. 2d at 382 (quoting *Seattle Times*, 467 U.S. at 34). The Florida court reasoned that the rationale of *Seattle Times* suggests that public access to information at the time it is first discovered presents unacceptable hazards to other constitutional rights because of uncertainty about the information that will be discovered. *Id.* at 383. A deposition, the court said, is unlike a pretrial suppression hearing or a preliminary hearing on probable cause, where the parties and the court know what will be discussed. *Id.* Irrelevant and inadmissible evidence may be discovered that has the potential of jeopardizing the right to a fair trial, the privacy rights of parties and nonparties, and the right to trial in the venue of the crime. *Id.* The court said that protective orders would be an inappropriate course for protecting these rights because they could impede criminal discovery, result in burdensome evidentiary hearings and time-consuming interlocutory appeals, pose problems re-

lated to the defendant's speedy trial rights, and would not serve the purpose of criminal discovery to assist in the trial and resolve the criminal charges. *Id.*

¶40 The court concluded that open access would not serve the discovery rules' purpose of assisting in preparation and trial and that "[t]ransforming the discovery rules into a major vehicle for obtaining information to be published by the press even though the information might be inadmissible, irrelevant, defamatory, or prejudicial would subvert the purpose of discovery." *Id.* at 384.

¶41 We agree that a public right of access would not play a significant positive role in the functioning of the proceeding. First, as the United States Supreme Court concluded in *Seattle Times*, 467 U.S. at 32, information surfacing during pretrial discovery may be unrelated or only tangentially related to the proceeding. There is a significant potential for abuse, which is not limited to problems of delay and expense, but may also seriously implicate the privacy interests of litigants and third parties. *Id.* at 34-35. The Court said that the government "clearly has a substantial interest in preventing this sort of abuse." *Id.* at 35.

¶42 *Seattle Times* involved civil discovery under our state's civil discovery rules. The deposition here is, in one respect, different from most civil depositions in that it was specifically taken to preserve Mr. Pfeiffer's testimony "in order to prevent a failure of justice." CrR 4.6(a). The News Tribune emphasizes this fact. However, while preserving testimony, the deposition undoubtedly also served the usual function of discovery to assist counsel in preparing evidence for trial.

¶43 And even with the difference in mind, there are significant similarities to the risks that the Court spoke of in *Seattle Times*. The very nature of the proceedings and Pfeiffer's role in the criminal acts charged practically ensured that information damaging to this third party's reputation and privacy would be disclosed, and although some of this information would without doubt be used at a

trial (whether through Pfeiffer's live testimony or by deposition), there was no certainty that all information obtained during the deposition would be admissible evidence (or that a guilty plea might not occur, obviating the need for the information at a trial). As Judge Cayce indicated during the bail hearing, rulings on admissibility remained to be made. Ultimately, as the Florida court put it in *Palm Beach Newspapers*, access to the deposition involved the potential for obtaining information that was inadmissible, irrelevant, defamatory, or prejudicial. Public exposure of such information would "subvert the purpose of discovery." *Palm Beach Newspapers*, 504 So. 2d at 384.

¶44 The News Tribune argues, however, that unlike the case in *Palm Beach Newspapers*, where the court emphasized the broad discovery rights of the parties and the hazards posed by extensive intrusion into privacy interests, here Judge Cayce expressly "confined the attorneys to inquiring into matters that were already known." Pet'r Tacoma News Inc.'s Reply Br. at 6. The News Tribune maintains that this shows that the proceeding was not merely discovery where the scope is broader. The News Tribune says that "[b]y limiting the testimony to matters already known and proceeding with the examination as if it was trial, none of the concerns articulated in *Palm Beach* [*Newspapers*] are present." *Id.* at 7.

¶45 This argument rests on a statement of Judge Cayce's that is taken out of context. Mr. Hecht's defense counsel expressed concern about the deposition being scheduled five days out because he did not feel he had sufficient time to prepare. The court asked about how much new information there would be, and counsel said he did not know. The court, evidently referring to information from two witnesses who had been interviewed about Pfeiffer's unwillingness to be a witness in the case, said it "sound[ed] like a brief conversation." VRP (Sept. 16, 2009) at 5 (Resp't's Answer in Opposition to Pet. for Writ of Mandamus & Emergency Relief, Ex. A). Counsel responded, "I have no idea." *Id.* The

court then said, "So don't cover that in that deposition. If we need to schedule another one, we will schedule another *one but limit the deposition to what's already known.*" *Id.* (emphasis added).[8] The judge did not act to limit the scope of the deposition, contrary to the out-of-context meaning the News Tribune attributes to his statement.

¶46 In summary, whatever benefit to the functioning of the proceeding might flow from a right of access to a criminal deposition of a material witness under CrR 4.6, if any, we do not believe it would be significant. On the contrary, the potential abuse resulting from access to a pretrial deposition in a criminal case indicates the functioning of the process is better served without public access.

¶47 Nor would public access advance the basic fairness of the criminal proceeding. At the deposition stage, the testimony has not yet been admitted in the trial, nor has a determination as to admissibility even been made. When the witness's testimony is preserved via a transcript or videotape, or both, and either the prosecuting attorney or defense counsel seeks to introduce it, and the judge rules it is admissible, the public will then have access to it. At that point, public access does contribute to the fairness of the proceedings in the same way it does in any criminal trial, and does so in relation to the evidence that is actually presented at the trial, without the potential for abuse that exists at the deposition stage itself. We do not agree that openness in a deposition proceeding before a criminal trial would enhance the basic fairness of the criminal proceeding and the appearance of fairness that is essential to public confidence in the criminal justice system.[9]

---

[8] A short discussion followed, where the prosecuting attorney described the information he had received the day before from the two witnesses, and said that he would provide this information in writing to defense counsel by the end of the day, having already advised counsel about it.

[9] Even assuming a violation, the dissent's belief that the entire transcript and videotape must be made available is mistaken. The room was closed to the public for only a few minutes, thus only a short portion of the transcript and videotape would have to be provided. Moreover, another problem arises as to any possible

¶48 We conclude, as have a number of other courts, that under the First Amendment there is no right of access to a pretrial deposition of a witness in a criminal case.

¶49 Because we conclude that neither article I, section 10 of the Washington State Constitution nor the First Amendment to the United States Constitution provides a constitutional right of access in the circumstances of this case, Judge Cayce, as the state official against whom a writ of mandamus is sought, did not violate these constitutional provisions when he declined to open the deposition to the public and he has no legal duty to produce the transcript and videotape of Mr. Pfeiffer's deposition or any part thereof. Accordingly, we deny the application for a writ of mandamus.

## CONCLUSION

¶50 The News Tribune's claim that the location and presence of the judge turned Mr. Pfeiffer's deposition into a "hearing" to which the open courts protections apply is incorrect. Nothing about the reason for the deposition changed, nothing about the substance of the deposition proceeding changed, nothing about the potential purposes of the deposition changed, and nothing about the use to which the deposition might be put changed as a result of the deposition being held in an empty courtroom with the judge present. In fact, as we have discussed, the deposition was never put to any use.

¶51 Our constitutional protections mean more than appearances alone.

---

access to even a part of the transcript and videotape—Judge Cayce is not actually in possession or control of the deposition transcript or videotape, and we are unclear by what authority he could order their production. The State as prosecutor is in possession of these materials (as explained, an assistant attorney general acted as the prosecuting attorney in Mr. Hecht's case). This, of course, makes sense, as Judge Cayce was not conducting a court proceeding and the deposition materials are not court records.

¶52 The application for a writ of mandamus is denied.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶53 ALEXANDER, J. (dissenting) — I entirely disagree with the decision the majority reaches in this case. In my view, we should grant the writ of mandamus that The News Tribune seeks. I reach this decision because the Tribune had a right to attend the deposition of Joseph Pfeiffer pursuant to a provision in our state constitution, article I, section 10, which says, in pertinent part, that "[j]ustice in all cases shall be administered openly."

¶54 In the instant case, the judge presiding over the taking of Pfeiffer's deposition was clearly endeavoring to do justice but, unfortunately, he did not do so openly. I say that even though I agree with the majority that most routine depositions, whether taken in a criminal or civil case, are not covered by the aforementioned constitutional provision. The instant deposition was not, however, routine. Strong support for that assertion is found in the fact that the deposition was presided over by the assigned visiting superior court judge, James Cayce, in a courtroom of the Pierce County Superior Court that had been set aside for that day's proceedings relating to the case of *State v. Hecht*, No. 09-1-01051-1 (Pierce County Super. Ct., Wash. Nov. 19, 2009).

¶55 By way of background, it should be noted that immediately prior to the deposition being taken, Judge Cayce entertained the State's request to grant Pfeiffer transactional immunity. Following Judge Cayce's ruling on the State's immunity request, the attorney for the State of Washington asked the judge to preside over Pfeiffer's deposition. Joseph Pfeiffer was clearly not an ordinary witness, the record making it clear that he was a key witness in the case against then-Pierce County Superior Court Judge

Michael Hecht. Pfeiffer's importance is demonstrated by the fact that at that time he was residing in the Pierce County jail pursuant to a material witness warrant. It is abundantly clear that it was the intent of the parties that this deposition should be taken in order to preserve Pfeiffer's testimony for trial, there being a concern that if Pfeiffer were released from jail prior to trial, he might not appear at trial. Indeed, Judge Cayce had earlier granted a motion authorizing the taking of the deposition and had scheduled it for the date and time at which the deposition was actually taken.

¶56 During the deposition, which took place in the same courtroom in which the hearing on transactional immunity had just taken place, Judge Cayce remained on the bench in his judicial robe. He also ruled on objections that were made during the direct examination and cross-examination of Pfeiffer. Furthermore, Judge Cayce defined to some extent the parameters of the examination of Pfeiffer and advised counsel that if it was necessary, another deposition could be arranged.

¶57 Hecht's defense counsel contended that, notwithstanding the fact that this deposition was a "preservation deposition," it should be closed to the public. Verbatim Report of Proceedings (Sept. 21, 2009) at 7. Counsel asserted that "no one has a right, as far as the public goes or press goes, to be there when you're doing witness interviews during the course of an investigation." *Id.* Although the State, represented by Assistant Attorney General John Hillman, expressed concerns about closing the proceeding, the trial judge agreed with defense counsel that the deposition should not be open to the public.

¶58 The trial judge erred in so ruling. This deposition was taken for the purpose of preserving the testimony of a witness for trial, and the trial judge who presided over it did so in a public courtroom, ruling on objections as they were

registered.[10] Although the deposition was not published at trial, if Pfeiffer had failed to appear at trial to give testimony, the deposition could and most likely would have been offered. If that had occurred, the rulings on objections that the trial judge made during the deposition would stand. This proceeding, in sum, had all the earmarks of a court session at which justice was being administered. At the very least, the proceeding at which the deposition was taken was a de facto court proceeding and it should have been open so that members of the public and the press who were present could hear Pfeiffer's testimony and observe the demeanor of the witness and the actions of the trial participants, including the trial judge. Unfortunately, the deposition did not take place in public. Because it did not, the only remedy this court can provide to the public for what is a violation of the aforementioned provision in our constitution is to mandate a release of the transcript of Pfeiffer's deposition testimony. This is what we should do.[11]

¶59 The majority asserts that the materials The News Tribune seeks are not court records and, thus, not obtainable in this mandamus action because Judge Cayce does not have physical possession of the deposition transcript or videotape. Although it would be rare for a superior court

---

[10] The majority says that the deposition was taken in a courtroom for the "convenience of the jail staff" and that it could have been "held in a law office." Majority at 69. Perhaps it could have been taken in a law office or some location other than the Pierce County courthouse, although I am doubtful that any law office would welcome having a deposition of an incarcerated individual taken on its premises. Furthermore, I am certain that a superior court judge would not be present at and preside over a deposition at such a location.

[11] The majority indicates that "[e]ven assuming a violation, . . . [t]he [court]room was closed to the public for only a few minutes, thus only a short portion of the transcript and videotape would have to be provided." Majority at 79 n.9. While the majority correctly observes that the reporter and the lawyer for The News Tribune entered Judge Cayce's courtroom after the deposition proceeding had commenced and were allowed to argue against continued courtroom closure, Judge Cayce had indicated prior to the commencement of the deposition that "it would be proper to exclude nonparties." Majority at 62. The fact that Judge Cayce offered The News Tribune the opportunity to seek reversal of his previous ruling does not alter the fact that the deposition was closed at the outset and remained so throughout the proceeding.

judge to have permanent physical possession of a court record, I trust that the majority would agree with me that pursuant to article IV, section I of the state constitution, the judicial power of the State is vested in the Supreme Court and superior courts. I submit, therefore, that all of the courts' records are in the constructive possession of the judges of those courts. That being the case, officers of the court, such as attorneys, court reporters, or clerks of court, when in possession of court records are, in essence, the alter ego of the judge and would be obligated to produce those records when the judge is required to do so. This view is certainly consistent with Washington court rules relating to access to court records, notably GR 31, which provides that it is the policy of the courts to facilitate access to court records. GR 31(a). Subsection (b) of that same rule indicates that the rule applies to all court records regardless of physical form. The record of a deposition taken under the auspices of a superior court judge certainly falls within that rule.

¶60 Nothing I have said in this dissent should be construed as a pronouncement that a trial court may never close a proceeding that is ordinarily open to the public. Any court proceeding can be closed for a good reason, but only after the trial court considers and appropriately applies the so-called *Ishikawa* factors. *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982). From the record before us, it is apparent that these factors were never discussed or considered before the instant court session was closed.

¶61 I dissent.

SANDERS, J. PRO TEM., concurs with ALEXANDER, J.