FILED
COURT OF APPEALS
DIVISION II

2014 DEC 16 AM 8: 37

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Dependency of<br><br>A.M.,<br><br>                             Minor Child. | No. 46515-9-II<br>(Consolidated with No. 46518-3-II)<br><br><br>UNPUBLISHED OPINION |
| In re the Dependency of<br><br>A.D.M.<br><br>                             Minor Child. | |

JOHANSON, C.J. — EM is the mother of two boys, ADM and AM,[1] whom the juvenile court found to be dependent children. We granted discretionary review of the juvenile court's decision to clear the courtroom of the public, including the mother and both counsel, during a dependency review status hearing so the court could hear privately from the children about their

---

[1] To provide some confidentiality, we use the juveniles' and their family members' initials in the case caption and in the body of the opinion.

placement during the dependency.[2] The Department of Social and Health Services (DSHS) concedes that the juvenile court erred. We accept this concession; hold that the juvenile court erred in excluding the public, including the children's mother and counsel, without first examining each of the *Ishikawa*[3] factors; vacate the June 26, 2014 order and oral decisions; and remand for further proceedings.[4]

## FACTS

On June 5, 2014, the juvenile court issued a first dependency review hearing order finding AM and ADM dependent.[5] The juvenile court placed the children with their paternal uncle after a "hotly contested" hearing. Clerk's Papers (CP) (AM) at 22.

On June 26, the juvenile court held a status conference to address the children's placement with their uncle. When the hearing began, the children's court appointed special advocate (CASA) moved to clear the courtroom, stating that "[t]he boys would like to talk to [the court] in private today." CP (AM) at 21. The mother's counsel objected, arguing that there was no authority to exclude the mother or her counsel from the courtroom and that the right to presence was constitutionally protected. DSHS also objected, arguing that the *Ishikawa* factors were "not met here." CP (AM) at 21. DSHS also argued that it would constitute improper ex parte contact.

The juvenile court ruled,

---

[2] We also consolidated the two cases and accelerated review.

[3] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

[4] Our commissioner has already determined that the mother is an aggrieved party. Neither party has moved to modify the commissioner's ruling; accordingly, we do not address this issue again.

[5] The June 5, 2014 order is not at issue in this appeal.

In terms of the *Ishikawa* factors, I'll have some more specific findings but I believe that the dependency review hearing was designed to move forward with reunification with parents and also to determine what's in the best interest of the child. And I'll make a note that both [DSHS] and [the mother] are objecting, and I'll find that clearing the courtroom of other parties and the public is the least restrictive means available, in terms of protecting the interest of the two boys that are at issue here, that we'll have a record of the proceedings and you're certainly entitled to a transcript of that, that I think the entire process is pretty intimidating for children, and that it's not going to take the place of testimony in any kind of contested hearing. It's simply to determine whether the children feel safe at this time in their current placement. As you know, we had a change in placement which was relatively hotly contested, so I would like to know how the boys are feeling about that in a less intimidating style.

I will state for the record there are probably about 20 people in the courtroom, so I will exclude everybody and enter an order to that effect.

CP (AM) at 22-23.

The juvenile court had everyone leave the courtroom except the children[6] and the CASA. The court then asked the children about their current placement with their uncle, their summer plans, and whether they had started counseling. It also invited the children to tell the court what they wanted to talk about with the court. The children stated that (1) they wanted be sure that when they were eventually reunited with their mother, they would be "safe" and would still be able to visit their uncle and his family, (2) they felt safe where they were currently living, and (3) they wanted to be able to visit their mother.

The court told the children that it was important for them to tell their CASA "what kind of things would make [them] feel safe" so the CASA could report this to the court when their mother was available for reunification.[7] CP (AM) at 26. The CASA responded, "They have been

---

[6] The boys were 12 and 13 at the time of the hearing.

[7] It appears that the mother was incarcerated at the time of this hearing.

3

reporting and that was our concern, some of the things they have been telling us that have gone on before." CP (AM) at 26. The juvenile court replied,

> I don't remember anything about that, but everybody else needs to hear that part of
> it. I just want to know that you feel safe here, because that was a concern when we
> had you moved to your uncle's. I want to make sure that's something that you guys
> wanted to do. So that was okay?

CP (AM) at 26-27. The boys said that it was "okay." CP (AM) at 27. The court then asked them about their summer plans, and they told the court they were going to a summer camp. The court also asked if they were going to counseling; they said that they had "just got in" and were going to start soon. CP (AM) at 28.

The court then told the boys that it would share what they had said with everyone when they returned to the courtroom. The CASA told the court, "Their concern was when their mom heard they were going to talk to you this afternoon, they are going to get yelled at." CP (AM) at 29. The court responded, "I can't help that." CP (AM) at 29.

The juvenile court allowed everyone back into the courtroom and described the above conversation. The court also stated that the current hearing was only a status conference to see how the children's placement with their uncle was going and that the court had understood that the boys had wanted to "come to court and talk to the judge." CP (AM) at 30.

The parties then discussed visitation issues and whether and how DSHS would pay for the mother's collect calls to the children. The juvenile court set another status hearing for August 7, and ordered the parties to figure out what would "make the boys feel comfortable [with the visits] before then." CP (AM) at 33-34. DSHS commented that the boys would be starting therapy the following week, so the therapist could also "weigh in" at the August 7 hearing. CP (AM) at 34. The juvenile court also issued the following written order:

4

Department to pay for summer camp - with Pierce County Parks + Rec. Children shall be provided with individual counseling. Department to work with uncle (placement) regarding reimbursement of costs re visits[,] status re visits w/mom 8/7/14 @ 10:00 am meeting should occur prior to court before next hearing.

CP (AM) at 15; CP (ADM) at 17.

The mother filed a notice of discretionary review. Holding that in closing the courtroom without weighing all of the *Ishikawa* factors and without issuing the necessary findings,[8] the juvenile court had committed probable error and the court's decision substantially altered the status quo or substantially limited the freedom of a party to act, RAP 2.3(b)(2), our commissioner granted review.

## ANALYSIS

The mother argues that the juvenile court erred when it closed the courtroom without fully considering the *Ishikawa* factors. DSHS agrees that the juvenile court closed the courtroom in violation of article I, section 10 of the Washington State Constitution.[9] We agree.

### I. PUBLIC TRIAL RIGHTS AND STANDARD OF REVIEW

Article I, section 10 of the Washington State Constitution provides that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." This provision "guarantees the public open access to judicial proceedings and court documents in both civil and criminal cases." *In re Dependency of J.A.F.*, 168 Wn. App. 653, 660, 278 P.3d 673 (2012) (citing *Dreiling*

---

[8] To our knowledge, the juvenile court still has not entered any findings related to the courtroom closure.

[9] The parties also argue that the juvenile court's closure was improper under RCW 13.34.115. DSHS also argues that the closure resulted in the court having impermissible ex parte contact with the children. Because we resolve this case on other grounds, we do not address these arguments.

*v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004)); *see also In re Adoption of M.S.M.-P.*, 181 Wn. App. 301, 308, 325 P.3d 392 (2014). The First Amendment also "'preserves the right of access to court proceedings and records.'" *J.A.F.*, 168 Wn. App. at 660 (quoting *Tacoma News, Inc. v. Cayce*, 172 Wn.2d 58, 65, 256 P.3d 1179 (2011)).

Courts may, however, limit public access to judicial proceedings if the court determines that closure is appropriate after applying and weigh the five *Ishikawa* factors.[10] *J.A.F.*, 168 Wn. App. at 661. The court must also enter specific findings justifying its closure order. *J.A.F.*, 168 Wn. App. at 661. Whether a public trial right has been violated is a question of law that we review de novo. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).

## II. VIOLATION OF PUBLIC TRIAL RIGHT

The juvenile court's oral ruling closing the courtroom shows that it did not consider all five *Ishikawa* factors. At the very least, there is nothing in the record showing that the court gave the general public present in the courtroom an opportunity to object to the closure and there was no discussion by the parties involved about whether there was a less restrictive means available to make the children comfortable. Furthermore, there are no written findings supporting the closure.

---

[10] These factors are (1) the proponent of the closure must make a showing of the need for a closure and if the closure is sought based on an interest other than the right to a fair trial, there must be a serious and imminent threat to that interest, (2) anyone present when the closure motion is made must be given an opportunity to object to the closure, (3) the court, the proponents of, and the objectors to the closure should analyze whether the proposed method of curtailing open access is the least restrictive means available and that it is effective in protecting the threatened interests, (4) the court must weigh the competing interests of the defendant and the public, and (5) the order must be no broader in its application or duration than necessary. *Ishikawa*, 97 Wn.2d at 37-39; *see also State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

Additionally, although RCW 13.34.115[11] allows the court to close dependency hearings and to exclude the parents and other relatives from the hearing if it is in the child's best interest, the juvenile court is still required to apply the *Ishikawa* factors and make appropriate findings. *See In re Det. of D.F.F.*, 172 Wn.2d 37, 41-42, 256 P.3d 357 (2011) (rule allowing for closure during involuntary confinement proceeding without first requiring evaluation of the *Ishikawa* factors violates article I, section 10 of the Washington State Constitution). Thus, to the extent the juvenile court was relying on RCW 13.34.115, the court still erred.

## III. CONCLUSION

The commissioner found that the mother was an aggrieved party and determined discretionary review should be granted. This order was not appealed. The State concedes that if review is granted, the trial court committed error. Both the State and the mother request this matter be remanded. Because the juvenile court erred, we vacate the juvenile court's June 26, 2014 order

---

[11] RCW 13.34.115 provides,

(1) All hearings shall be public, and conducted at any time or place within the limits of the county, except if the judge finds that excluding the public is in the best interests of the child.

(2) Either parent, or the child's attorney or guardian ad litem, may move to close a hearing at any time. If the judge finds that it is in the best interests of the child the court shall exclude the public.

(3) If the public is excluded from the hearing, the following people may attend the closed hearing unless the judge finds it is not in the best interests of the child:

(a) The child's relatives;

(b) The child's foster parents if the child resides in foster care; and

(c) Any person requested by the parent.

(4) Stenographic notes or any device which accurately records the proceedings may be required as provided in other civil cases pursuant to RCW 2.32.200.

(5) Any video recording of the proceedings may be released pursuant to RCW 13.50.100, however, the video recording may not be televised, broadcast, or further disseminated to the public.

Consol. Nos. 46515-9-II / 46518-3-II

and the related oral rulings, and remand for a new hearing that is either open to the public or is closed following the proper procedure.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.

JOHANSON, C.J.

We concur:

MAXA, J.

SUTTON, J.

8